## YEAGER v. LAREDO NAT. BANK.

### No. 3985.

Court of Civil Appeals of Texas. El Paso.

Oct. 24, 1940.

Rehearing Denied Jan. 9, 1941.

Nat. B. King, C. N. Fansler, and Neel & King, all of Laredo, for appellant.

Gordon Gibson, of Laredo, for appellee.

PRICE, Chief Justice.

This is an appeal from a judgment of the District Court of Webb County establishing an unsecured claim in the sum of $5,-685.90 against the estate of Miles T. Cogley, deceased, and denying same as a secured claim.

Mrs. Cora F. Yeager, appellant here, was the owner of the claim in question. The claim was allowed by the administratrix with the will annexed as a secured claim. The security being thirty shares of the capital stock of City Lumber Company, a corporation. The claim was filed in the County Court and the appellee, Laredo National Bank, an unsecured creditor, filed opposition to the allowance thereof as a secured claim, but did not oppose its allowance as an unsecured claim. Judgment of the County Court allowed the claim as a secured claim. Appellee here in due time perfected an appeal to the District Court of Webb County.

In the District Court the claim was allowed as an unsecured claim, but disallowed as a secured claim.

The trial was to the court without a jury and was heard on the transcript of the evidence taken before the County Court. In short, on written testimony only. Findings of fact and conclusions of law were not requested of the trial court, and none were made.

█ Regardless of the fact that the judgment was rendered on written ·evidence, which was without conflict, and in ·passing on same the trial court had no peculiar advantage over this court in so doing, it is conceived to be our duty to attribute to the trial court, if supported by any substantial evidence, such findings as will support the judgment. If so supported, the findings are final and not to be set aside.

The claim was founded on a promissory note in the sum of $4,500, dated May 25, 1936, payable one year after date to the order of appellant, the rate of interest being eight per cent, signed by Miles T. Cogley, Trustee.

Miles T. Cogley died on the 7th day of February, 1938. This note was found by the administratrix after his death in a box or safe in his home. Attached thereto was the corporate stock in question which he had endorsed in blank.

The transactions out of which this claim arose had their inception about twenty years ago. Deceased Cogley was president of the Milmo National Bank of Laredo. He carried an account in the bank as Miles T. Cogley, Trustee. The source of this account was money entrusted to him for investment. When money was received by him for this purpose same was deposited in the account. At the time of the receipt of money for this purpose it was his custom to sign and place among his papers a note payable to the order of the customer in the amount of money received, signed Miles T. Cogley, Trustee. These notes were not delivered to the payee thereof, but remained in Cogley's custody and control. When loans were made out of this trust account the money was withdrawn by check thereon. If payments of principal or interest were made to the persons advancing the money, same were deposited in this account and paid out of same. This general way of conducting the business is indisputably established by the evidence.

In the year 1918 appellant entrusted $7500 to him to be used in obtaining an income for her. This transaction, or rather series of transactions, was handled in about the same general way as above indicated. At the time of the receipt of the money he executed a promissory note in that amount, payable to her order, due one year after date, bearing eight per cent interest per annum. From time to time new notes of renewal were executed. These notes were never delivered, but at all times remained in his possession and control. At the time the note for $4,500 in question was executed, the $7,500 had been reduced by payments to that amount. One year's interest in the sum of $360 was paid on the $4,500 note. This note was never in the possession or control of the appellant.

At the time of the delivery by appellant of the $7,500 to Mr. Cogley he attached to the note the stock in question ·endorsed in blank. From time to time, as renewal notes were signed, he would detach the stock from the old note and attach same to the new.

There is no direct evidence that at the time the $7,500 was delivered to him by appellant there was any agreement that the return of the money by him to her was to be secured by the stock in question.

As to the transactions between appellant and Cogley at the time of the delivery of the money his lips are sealed by death and hers by law.

From time to time appellant's daughter went to see him for her mother about the investment. He assured appellant's daughter that the money was amply secured by the stock in question. On the daughter's last visit, about one year before his death, he again assured her the money was well secured and showed her the note in question here with the stock attached thereto endorsed in blank.

On numerous occasions he told those in charge of the bookkeeping in connection with his trustee account that appellant's claim was secured by the stock in question, and they saw same attached by him to the notes.

The inference is compelled from the evidence introduced that at all times from the receipt of the $7,500 from appellant to his death that Miles T. Cogley thought that the stock in question was dedicated to the securing the return to appellant of the money delivered to him by her. This is true, regardless as to whether the relationship was that of debtor and creditor or of trustee and beneficiary. It is evidenced by

the fact that he attached the stock, by his declarations to third parties, by his declarations to appellant's daughter. He conceived it to be his duty to hold and keep this stock for the securing of his obligation to appellant. His actions, from the inception of the transaction to its close, were consistent with his conception of his legal duty.

In denying the claim as a secured claim the trial court most certainly found that the money of appellant was not traced to the acquisition of the stock by Cogley. This stock represented a stock dividend due Cogley from the corporation. Also, we think, the finding must be attributed that possession of this stock was never delivered to appellant in pledge to secure the return of appellant's money.

In any event, the above findings were clearly in consonance with the evidence introduced. Necessarily there must be attributed finding that by contract, either express or implied, Miles Cogley was bound to return the $4,500 to appellant, and in case of failure to meet this obligation, if such claim was placed in the hands of an attorney, to pay ten per cent additional as attorney's fees. In no other way than by contract is it conceivable that Cogley was so bound. The judgment rendered affirms this.

It is the exact obligation purported to be evidenced by the promissory note. Likewise, we think, must be attributed the finding of the trial court that there was no agreement existing between Miles T. Cogley and appellant that her claim be secured by the stock in question. This is the only finding that is consistent with the judgment rendered. This theory is, we think, projected by the pleadings, and, to say the least, in our opinion, raised by the evidence.

A lien may be created on personal property good, as between the parties, by parol. To the creation and existence of the lien possession by appellant of the property was not essential. Sparkman v. First State Bank, 112 Tex. 33, 244 S.W. 127.

Such a mortgage is, in our opinion, good, except as against creditors, etc., as provided in Article 5490, R.S.1925. Appellee, having no specific lien on the property in question, is not a creditor within the meaning of that article.

The mere attaching of the stock to the note, in and of itself, is not sufficient to establish such an agreement for a lien. The mere signing of an undelivered note, in and of itself, was perhaps insufficient to evidence an obligation to return the money. It was, however, strong evidence of this obligation in the nature of a declaration against interest. As before stated, this obligation arose by virtue of either an express or implied contract. If there was not some agreement that the stock should stand as security, the attaching of same to the note was an anomalous action. Repeatedly Cogley declared the stock was security for the return of the money. These declarations were made from time to time to disinterested third parties. They were made from time to time to Mrs. Withoff, who was appellant's daughter and acting as her agent.

On the last occasion Mrs. Withoff talked to him on behalf of her mother, the note and stock were shown her. She was assured that the debt was secured by the stock in question. This transaction is, in our opinion, standing alone, sufficient to create an equitable lien on the stock in question.

A preexisting indebtedness is sufficient consideration to support a chattel mortgage. 14 C.J.S., Chattel Mortgages, § 42, p. 649.

It is a fact that Mrs. Withoff was the daughter of appellant, but her testimony is uncontradicted. If not corroborated by, it is consistent with, numerous declarations made by Cogley to disinterested third parties, also consistent with his acts over a period of eighteen years in faithfully retaining the stock to the end and purpose of securing the performance of the obligation owed to appellant.

In our opinion the overwhelming preponderance of the evidence established that there was a parol contract between appellant and Cogley that this stock was to be security for the return of the money involved.

The question then arises as to whether we should reverse and render the judgment entered as to the security, or simply reverse and remand the cause. It seems that the case has been fully developed and can have but one end. It is, therefore, ordered that the judgment, insofar as it denied the claim as secured, is reversed, and judgment is here rendered that said claim be established as secured by the thirty shares of stock in question, and this judgment be certified to the County Court of Webb County for observance.