## CHADDICK v. SANDERS et al. (No. 6915.)

(Court of Civil Appeals of Texas. San Antonio. March 28, 1923. Rehearing Denied May 2, 1923.)

Sales ⬅️48½, New, vol. 13A Key-No. Series— Note given for automobile delivered without bill of sale or transfer of license unenforceable.

Where, on purchase of an automobile, an old automobile was given on the price, together with a note for the difference, and the cars were delivered without obtaining bills of sale or transfers of the licenses as required by Acts 36th Leg. (1919) c. 138 (Vernon's Ann. Pen. Code Supp. 1922, arts. 1617¾–1617¾k), no recovery could be had on the note or by the purchaser from the seller for fraud.

Appeal from District Court, Nueces County; W. B. Hopkins, Judge.

Suit by C. Chaddick against H. E. Sanders and others. Judgment for defendants, and plaintiff appeals. Reversed, and cause dismissed.

Kleberg, Stayton & North, of Corpus Christi, for appellant.

Boone, Pope & Savage, of Corpus Christi, for appellees.

FLY, C. J. This is a suit on a promissory note for $1,245 executed by H. E. Sanders on September 1, 1920, and indorsed and payment guaranteed, in consideration of an extension, by E. O. Sanders on November 18, 1920, and to foreclose a certain chattel mortgage on a Hudson four-passenger speedster. Appellant, as plaintiff, claimed, in addition to the amount of the note, $10 for automobile ac-

cessories purchased by H. E. Sanders. Appellees answered by general demurrer and general denial, pleaded at great length fraud and misrepresentation, and set up a cross-action. The cause was submitted to a jury on special issues, and judgment on the answers thereto was rendered that appellant take nothing by his suit, that appellees recover the sums of $1,969 and $111.05 and $463.34, the whole aggregating $2,542.24, and for the return of the Hudson speedster to appellant.

It was, in substance, alleged by appellees in their cross-action that H. E. Sanders had executed the note sued on and the chattel mortgage on the Hudson speedster, but that the same were wholly without consideration, that the note was executed, and then indorsed by E. O. Sanders on a false statement that the automobile was a new one, and was of the value of $2,995, who then gave to appellants an Oldsmobile car of the value of $1,750 and the note and mortgage sued on for the Hudson speedster, and afterwards made payments to appellants of $58.50 at one time and $441.50 at another, and afterwards discovered that the Hudson car was secondhand, and not of the value of more than $500, and was weak and badly constructed. Appellees prayed for judgment for the value of the Oldsmobile in the sum of $1,750, and for any other sums to which they might show themselves entitled, and for the cancellation of the note and mortgage. Seventeen special issues were placed before the jury, and in answer thereto they found that T. D. Ward traded the speedster back to appellant, from whom he had bought it, and had the tax collector's receipt for license tax when he traded, but did not deliver it to appellant, nor transfer it, and did not deliver a bill of sale for the car to appellant; that appellant did not transfer the receipt to appellee H. E. Sanders, and did not give him a bill of sale; that it was represented to H. E. Sanders that the Hudson speedster was a new car by an agent of appellant; that appellee believed it was new; that E. O. Sanders believed the car to be new when he indorsed the note; that the speedster was of the reasonable market value of $2,845 when sold to H. E. Sanders; that there was no expenditure on the car by H. E. Sanders because none was necessary; that appellant did not give a bill of sale or receipt for license tax to H. E. Sanders.

The defense to the note was fraud and a failure of consideration, and the same was the basis of the cross-action, and no such issue was submitted to the jury, but the whole case was made to turn on whether appellant had transferred a license or given a bill of sale to appellee, and, although appellee H. E. Sanders had traded in his Oldsmobile for a Hudson speedster without giving a bill of sale, the man who traded with him and gave no bill of sale was penalized for such omission to the extent of losing the use of his Hudson car, all the payments made on it, the amount of the note, and, in addition, is made to pay Sanders $2,542.24.

The evidence showed that H. E. Sanders bought the secondhand car from appellant without obtaining a bill of sale or transfer of the license, and also sold an Oldsmobile car to appellant without giving a bill of sale or transferring a license.

The statute passed in 1919 by the Thirty-Sixth Legislature (General Laws, pp. 253–256 [Vernon's Ann. Pen. Code Supp. 1922, arts. 1617¾–1617¾k]), provides:

"Sec. 3a. It shall be unlawful for any person acting for himself or any one else, to offer for sale or trade any secondhand motor vehicle in this state, without then and there, having in his actual physical possession the tax collector's receipt for the license fee issued for the year that said motor vehicle is offered for sale or trade.

"Sec. 3b. It shall be unlawful to sell or trade any secondhand motor vehicle in this state without transferring by indorsement of the name of the person to whom said license fee receipt was issued by the tax collector and by physical delivery of the tax collector's receipt for license fee for the year that said sale or trade is made.

"Sec. 3c. It shall be unlawful for any person acting for himself or another to buy or trade for, any secondhanded motor vehicle in this state without demanding and receiving the tax collector's receipt for the license fee issued for said motor vehicle for the year that said motor vehicle is bought or traded for."

A penalty is prescribed for a violation of either of the sections, which may be a fine or imprisonment.

Section 4 of the same act provides:

"It shall be unlawful for any person, whether acting for himself or as an employé or agent to sell, trade, or otherwise transfer any secondhand motor vehicle without delivering to the purchaser a bill of sale in duplicate, the form of which is prescribed in this act, one copy of which shall be retained by the transferee as evidence of title to ownership, and the other copy of which shall be filed by the transferee with the county tax collector as an application for transfer of license together with the lawful transfer fee of $1.00."

This statute was violated by both appellant and appellees, because the records fail to show any attempt whatever to comply with the requirements as to license or as to bills of sale. If appellant violated the law in selling the Hudson speedster to H. E. Sanders without transferring the license receipt, Sanders violated the law in buying a secondhand car without demanding and receiving the tax collector's receipt for the license fee. If appellant was guilty of a violation of the law in selling or trading a secondhand car to H. E. Sanders without giving a bill of sale, H. E. Sanders was guilty of violating the

law in selling or trading a secondhand car to appellant without giving a bill of sale. Both are equally guilty of violating the law, and, if one is to suffer by such violation, the other must also suffer. There is no testimony tending to show that H. E. Sanders transferred his license fee receipt or made a bill of sale to the Oldsmobile car which he traded to appellant, and, although he might be excused for not obtaining a transfer of the license fee receipt for the Hudson car on the ground that he thought it was a new car, he was guilty in regard to the Oldsmobile car. The parties are in pari delicto.

Every contract derives its obligatory force from the sanction of the law, and the plainest example of an illegal contract is one which violates the provisions of a statute. The courts cannot and will not recognize as valid any contract made in disregard of positive law, and no contract can be legal if it violates a statute or cannot be performed without the violation of such a statute. 6 R. C. L. p. 699, §§ 105–107, and numerous authorities cited in the footnotes. Such contracts are absolutely void, and will not be enforced in the courts. The object of the quoted statute, as stated in the caption, was "to prevent theft of motor vehicles; and providing that it shall be unlawful for any person or persons to have in possession or sell or offer to sell, or to use upon public highways, any motor vehicle from which the engine number has been removed or obliterated, * * * providing that it shall be unlawful to transfer any secondhand motor vehicle without the purchaser securing from the seller a bill of sale." Undoubtedly the statute was enacted to protect the public against fraud and imposition, and all courts agree that contracts in violation of such statutes are void. 6 R. C. L. § 110, p. 704.

If appellees' proposition that "one who knowingly sells a secondhand automobile without executing a bill of sale and transfer of license and physical delivery of the same to the purchaser, as required by the Penal Code, cannot recover on a purchase note and mortgage given therefor" is correct, they stand in no better position than the appellant. H. E. Sanders also sold or traded a secondhand motor vehicle without complying with the statute, and that sale was an inseparable part of the sale by appellant. Another correct proposition propounded by appellees is:

"The courts will not enforce an illegal contract where the illegality appears in the proof, though not pleaded, whether the illegality is malum in se or malum prohibitum."

The illegality of a contract made in defiance of law is fundamentally wrong, and will be noticed in the absence of any pleading.

Whatever may have been H. E. Sanders' belief as to the Hudson speedster being a new car, and that no receipt or bill of sale was necessary, he knew that the sale of his secondhand Oldsmobile made it incumbent on him to transfer his license fee receipt, and to make a bill of sale to appellant. If appellant could not lawfully sell his Hudson car without complying with the law, H. E. Sanders could not lawfully sell his Oldsmobile car without complying with the law. The illegality of the transaction permeated it from one end to the other, and rendered the contract so obnoxious to law that courts should and will decline to enforce it. The parties should be left in the unenviable position voluntarily assumed by them, and be forced to reap the harvest for which they have sown. Wiggins v. Bisso, 92 Tex. 219, 47 S. W. 637, 71 Am. St. Rep. 837; Seeligson v. Lewis, 65 Tex. 215, 57 Am. Rep. 593; Overland Sales Co. v. Pierce (Tex. Civ. App.) 225 S. W. 284; Goode v. Martinez (Tex. Civ. App.) 237 S. W. 576; Foster v. Beall (Tex. Civ. App.) 242 S. W. 1117. The last three cases were decided under the law of 1919, herein cited, and are directly in point.

In the cited case of Foster v. Beall, suit was brought on a note given in part payment for a secondhand car and the defendant (appellant) alleged that the license receipt was not transferred nor a bill of sale given, and sought recovery for the money paid on the car and a cancellation of the note. Judgment was rendered in favor of the plaintiff (appellee) on the note. On appeal the statute of 1919 was quoted, and the Court of Civil Appeals, through Associate Justice Hodges held:

"The statute quoted above was enacted, not simply for the purpose of regulating the transfer of the title to personal property, but as a method of suppressing automobile thefts. Compliance with that law is not a formality which the parties may waive. The general public has an interest in its observance. When the appellee sold and delivered the car to the appellant without executing and delivering the necessary papers, he committed a penal offense, punishable by a fine. He knowingly did that which the law said he should not do. His alleged good intentions did not excuse him. He is charged with a knowledge of those legal requirements, and he knew that he had not performed them."

In that case the judgment was reversed, and relief denied to both seller and purchaser of the car.

The judgment in this case will be reversed, and the cause dismissed; the costs to be equally divided between appellant and appellees.