ELDER CHEVROLET CO. v. BAILEY COUNTY MOTOR CO. et al.

No. 4072.

Court of Civil Appeals of Texas. El Paso.

April 17, 1941.

Rehearing Denied May 15, 1941.

T. D. Kimbrough, of Midland, for appellant.

Clayton & Bralley, of Amarillo, for appellee.

PRICE, Chief Justice.

This is an appeal from the judgment of the District Court of Midland County. Appellant, Elder Chevrolet Company, a partnership composed of J. H. Elder and S. M. Erskine, was plaintiff below; Bailey County Motor Company, a partnership composed of Joe Machen and Mack Kimmons, and Southwestern Investment Company, a corporation, were defendants. Plaintiff sought recovery on a promissory note in the sum of $790, and the foreclosure of an alleged chattel mortgage lien on one 1939 Ford Coupe, Motor No. 18–4739374, alleged to have been executed and delivered to plaintiff by Bailey County Motor Company, the note and mortgage being dated March 18, 1940, and the note alleged to be due on April 18, 1940. Southwestern Investment Company was alleged to be in possession of the Ford car in question, claiming some interest therein, and it was sought to compel that defendant to deliver the possession to a receiver theretofore appointed in connection with plaintiff's suit to foreclose the alleged mortgage. The receiver was appointed without notice to defendants, and the Southwestern Investment Company was ordered to deliver the motor car in question to the receiver. The Southwestern Investment Company was alleged to be in possession of the motor car and to have acquired same from the Bailey County Motor Company. Plaintiff sought no relief against the defendant Southwestern Investment Company other than it be compelled to deliver the car to the receiver. As against the Bailey County Motor Company, it sought a foreclosure of its alleged lien. The value of the automobile was alleged to be $500. The only service obtained upon Bailey County Motor Company was by notice to nonresident served in the State of New Mexico upon Mack Kimmons. The Bailey County Motor Company did not answer, nor did either of the parties alleged to compose such copartnership answer in the case. Defendant Southwestern Investment Company (appellee here) claimed a right to the possession of the motor car in question by virtue of a sale thereof by defendant Bailey County Motor Company to Carl S. Stewart; part of the consideration thereof was a promissory note in the sum of $366.-30, executed and delivered to that defendant by Stewart, and a chattel mortgage was given on the motor car by Stewart to secure said note; the said appellee purchased the note before maturity from the Bailey County Motor Company, default thereafter by Stewart, the taking of possession of the car by it in accordance with the chattel mortgage. Many grounds were urged by this defendant to show the invalidity of the asserted lien of plaintiff and as to why the lien was inferior to the one asserted by it. Various grounds of estoppel against plaintiff are likewise urged.

We shall not attempt to summarize the pleadings other than to say that all issues hereinafter discussed arise under the pleadings of the parties.

The trial was before the court without a jury. By the terms of the judgment defendant Southwestern Investment Company recovered a judgment against plaintiff and the receiver for the possession of the motor car in question. The receiver was ordered to restore the possession thereof to it. The case was dismissed as to the Bailey County Motor Company on the ground that there was no personal service on the firm or either of the members thereof, and no basis upon which to render a personal judgment against the firm or the copartners. Plaintiff has duly perfected an appeal from this judgment.

The facts in this case are undisputed. The application of the law to undisputed facts is all that is involved.

Elder Chevrolet Company was at all relevant times a partnership; its business was that of a dealer in automobiles in the City of Midland, Texas. The evidence seems to indicate that this firm largely, if not entirely, dealt in used cars. On March 18, 1940, it contracted to sell to Bailey County Motor Company five second-hand cars, one of which was the car in question here. Terms of the sale were, total consideration $1,020, $230 cash, and a note for $790, payable on or before April 18, 1940, to the Elder Chevrolet Company. This note purported to be secured by chattel mortgage on the cars. Bailey County Motor Company paid the cash and executed and delivered the note and mortgage. Plaintiff then delivered possession of the cars to the Bailey County Motor Company, with notice that said defendant intended to offer same for sale. This chattel mortgage has never been registered in any county of the State of. Texas. At the time of this transaction Elder Chevrolet Company never assigned a certificate of title as required by the Act known as the Certificate of Title Act to the Bailey County Motor Company. This latter Company never made application to the Department of Public Safety or any agent thereof for a certificate of title to any of the cars covered by the mortgage. Elder Chevrolet Company now holds a certificate of title issued by the Department of Public Safety to the car in question herein. This certificate shows that the car was purchased from Cen-Tex Supply Company, and that there are no liens upon same. It is dated April 12, 1940. This certificate has never been assigned to Bailey County Motor Company, nor has the Elder Chevrolet Company ever offered to assign it to that concern.

On March 30, 1940, Carl S. Stewart entered into a contract with Bailey County Motor Company to purchase the 1939 Ford motor car in question here. By the terms of the contract he was to make a cash payment and convey another motor car to that concern, execute a note in the sum of $366.30, payable in monthly installments of $25.35 each, Stewart in accordance with the contract made the payment, executed the note and mortgage, and Bailey County Motor Company delivered to him possession of the car in question. Bailey County Motor Company assigned him no certificate of title, and he did not apply for and receive any certificate of title so far as is shown by the record.

On April 1, 1940, defendant Southwestern Investment Company purchased from Bailey County Motor Company the Stewart note and mortgage, and that concern duly endorsed same to it. This note was purchased in due course and for value; the purchaser was without notice of the mortgage held by plaintiff. The mortgage assigned to the purchaser authorized the owner of the note on default to take possession of the car.

Stewart made no payment on the note, and before maturity Southwestern Investment Company obtained possession of the car and has since held possession thereof until, in pursuance of the order of the court, it was surrendered to the receiver. At the time of the purchase of the note it made no investigation as to in whose name the certificate of title to the car stood, and as to what same showed as to liens thereon.

The above are substantially the undisputed facts. These facts reveal to our minds a situation in which each party prosecuting this appeal will suffer damages through no intentional wrong doing. It reveals a situation where all parties in conducting the transactions involved entirely ignored the Certificate of Title Act.

The Certificate of Title Act went into effect October 1, 1939. Its provisions are to be found in Article 1436—1, Vernon's Annotated Penal Code. This is a very comprehensive and detailed enactment relating to the transfer of title to motor

vehicles and the registration of such titles and the certification thereof. The matter of registering liens on motor vehicles is likewise regulated in a detailed and comprehensive manner and the result of a failure to so evidence and register same declared.

We shall not burden this opinion with setting out this Act in full. Where deemed pertinent to this controversy certain sections thereof will be set forth.

The car involved here was a used car when sold within the meaning of Section 10 of the Act in question. The Bailey County Motor Company was a dealer within the meaning of Section 19, and the sale attempted on March 18, 1940 a subsequent sale within the meaning of Section 8.

Section 33 is as follows: "No motor vehicle may be disposed of at subsequent sale unless the owner designated in the certificate of title shall transfer the certificate of title on form to be prescribed by the Department before a Notary Public, which form shall include, among such other matters as the Department may determine, an affidavit to the effect that the signer is the owner of the motor vehicle, and that there are no liens against such motor vehicle, except such as are shown on the certificate of title and no title to any motor vehicle shall pass or vest until such transfer be so executed."

Section 42: "No lien on any motor vehicle shall be valid as against third parties without actual knowledge thereof or enforceable against the motor vehicle of any such third parties as the issuance of a certificate of title thereof, unless an application for a new title is made as prescribed in this Act and all first and subsequent liens noted by the Department thereon."

Section 43: "All liens on motor vehicles shall take priority according to the order of time the same are recorded on the receipt or certificate of title of all such recordings to be made by the Department."

Section 44: "No lien on any motor vehicle to which a receipt or certificate of title has been issued shall be valid as against third parties without actual knowledge thereof, or enforceable against the motor vehicle of any such third parties, unless the notation of said lien shall have been caused to be made on receipts and certificates of title on said motor vehicle, as provided in this Act."

Section 45: "Exposure for sale of any motor vehicle by the owner thereof with the knowledge or consent of any mortgagee shall not affect the rights of any mortgagee as against all third parties."

Section 46: "Only liens noted on a receipt or certificate of title shall be valid as against creditors of the mortgagor in so far as concerns the motor vehicle."

Section 51: "It shall hereafter be unlawful for any person, either by himself or through any agent, to offer for sale or to sell or to offer as security for any obligation any motor vehicle registered or licensed in this State without then and there having in his possession the proper receipt or certificate of title covering the motor vehicle so offered."

Section 52: "It shall hereafter be unlawful to buy or acquire any title other than a lien in a motor vehicle registered or licensed in this State without then and there demanding of the proposed seller the registration receipt and certificate of title covering the particular motor vehicle which shall, upon consummation of the purchase, be transferred upon such form as may be provided by the Department."

Section 53: "All sales made in violation of this Act shall be void and no title shall pass until the provisions of this Act have been complied with."

A consideration of the sections above quoted in connection with the entire Act indicates an intention to make the certificate of ownership the primary and controlling evidence of title after a motor vehicle has been sold for the first time. This purpose is further evidenced by the requirement of Section 37 that when a motor car ceases to function as such that the certificate of title be surrendered. On each sale on the certificate provided for in the law must be shown all outstanding liens against such car.

As we have stated, in all the transactions by which the rights of the parties are claimed to have been affected here, there was an entire disregard of the Act.

Before discussing specifically the effect, if any, of the transactions here involved on the rights of the parties, let us consider the law before the enactment of the Certificate of Title Act.

Article 1434, Vernon's Annotated Penal Code, as amended October, 1931, Forty-second Legislature, c. 29, in substance provided that anyone selling or trading a sec-

ondhand automobile in a manner not in conformity with the provisions of that Article should be deemed guilty of a misdemeanor, and providing punishment for any such misdemeanor. After the passage of this law a number of Courts of Civil Appeals held that a transfer of title could not be made where the transaction did not conform to that Article.

In the case of Hennessy v. Automobile Ins. Ass'n, 282 S.W. 791, 792, 46 A.L.R. 521, in an opinion expressly adopted and approved by the Supreme Court, it is held that a failure to conform to this statute did not render a sale void. It was there held that the sale of a secondhand automobile was not prohibited, the gist of the crime was failure to comply with regulations as to the sale. The purpose of the Act was to prevent the theft of automobiles—theft of automobiles had no direct relation to their sale and transfer. In the opinion it was said: "The act does not expressly provide that sales * * * shall be void." This authoritative interpretation has, since the case above referred to, been followed consistently. Eastus v. Gabert, 127 Tex. 290, 93 S.W.2d 396.

Section 1 of the Certificate of Title Act declares generally the purpose of the law. It is somewhat broader in scope and purpose than Article 1434. Section 53 thereof, hereinabove set out, provides no title shall pass until the Act be complied with. Sections 41, 42, 43 and 44 relate to the validity and precedents of liens under the Act.

In considering the case of Hennessy v. Automobile Ins. Ass'n, supra, it must be borne in mind that there was no provision in the law then declaring a failure to comply with the article should result in the title not passing. In the Certificate of Title Act there is such a provision. Note Section 53 thereof.

The weight of authority in other states having laws basically the same as our Certificate of Title Act, is that a sale not conforming to the law is void and does not pass title. 37 A.L.R. 1465; Morris v. Firemen's Ins. Co., 121 Kan. 482, 247 P. 852, 52 A.L.R. 701; Commercial Credit Co. v. Schreyer, 120 Ohio St. 568, 166 N.E. 808, 63 A.L.R. 688; Rankin v. Wyatt, Mo. Sup., 73 S.W.2d 764, 94 A.L.R. 948; Blashfield's Cyclopedia of Automobile Law and Practice, Permanent Edition, Vol. 7, §§ 4261, 4262.

We think it probable that Section 53 of the Act in question was passed with the intent on the part of the Legislature to modify the law as declared by the Supreme Court originally in Hennessy v. Automobile Ins. Ass'n, supra. It cannot be validly asserted this was beyond its power. The decision in question makes no such holding. By such a provision freedom of contract is not impaired—it merely regulates the mode of manifestation of the intention of the parties. To hold that title did pass would be in the face of a statutory provision that is too plain to require construction. It is not contended that the Legislature did not have the power under the Constitution to pass this law.

There is, however, a valid and subsisting distinction between a sale and a contract to sell. Of the essence of the sale is the present transfer of title to the property to the possessor; of the essence of the contract to sell the present passage of title is not contemplated, but same is to pass in the future.

In our opinion the Certificate of Title Act does not attempt to regulate a contract to sell a motor vehicle. It is the execution of the contract to sell after same is made that is regulated. The matter of contract liens, their registration, validity and priority are likewise regulated. Nowhere in the law, in our opinion, is the attachment of a lien, for instance, for storage charges, prevented, or a mechanic's lien for work done on a motor vehicle prohibited. The pledge of a car by the owner holding a certificate of title to secure an indebtedness does not seem to be prohibited. To such liens, we take it, possession by the claimant would be essential.

In the light of what we have said above we shall examine the series of transactions here involved.

The transaction of March 18, 1940, between plaintiff and Bailey County Motor Company was insufficient to vest the title to the 1939 model Ford in Bailey County Motor Company. For this purpose same was void and ineffective. This does not necessarily mean that it was entirely void and ineffective. An ineffective attempt to convey may in some cases be construed as a contract to convey. This transaction, in our opinion, was sufficient to bind the plaintiff so far as in its power to take the

initial steps necessary to enable Bailey County Motor Company to obtain a certificate of title. Surrender of the physical possession of the car to that Company was not forbidden by the Act. Possession of the car was security for the performance of the obligation of the plaintiff. This obligation plaintiff has never performed, never offered to perform.

Even in its pleading it does not assert a title or right of possession vested in it. By the terms of the mortgage under which it claims it had a right to take possession of the car for the purpose of enforcing its purported lien. Here, a judicial foreclosure is sought. It is not sought to recover the car by virtue of a superior title thereto, but the court was asked to sequester same through a receivership to the end that plaintiff's alleged lien might be foreclosed.

If the title to this car never passed, the consideration for the note and mortgage has totally failed. Furthermore, the court was called upon to enforce an illegal sale. The cash payment, the note and mortgage were all integral parts of the sale.

In a long line of decisions the Courts of Civil Appeals had held that one failing to conform to Article 1434 could not recover on a promissory note given as part of the purchase price. Overland Sales Co. v. Pierce, Tex.Civ.App., 225 S.W. 284; Chaddick v. Sanders, Tex.Civ.App., 250 S.W. 722; Foster v. Beall, Tex.Civ.App., 242 S.W. 1117.

These cases were perhaps all overruled in principle at least by Hennessy v. Automobile Ins. Ass'n, supra. Chaddick v. Sanders, supra, was reversed upon writ of error by the Supreme Court, 267 S.W. 248. However, when that case was decided there was no provision similar to Section 53 of the present Certificate of Title Act in existence.

If this were a suit (which it is not) to recover the title to the car in question from the Southwestern Investment Company, had the Bailey County Motor Company paid the entire consideration in cash and the Elder Chevrolet Company failed and refused to transfer the certificate of title, could it be allowed to sue for the recovery of the title? Any right thinking person would answer the question in the negative. The Bailey County Motor Company would be entitled to retain the possession of the car and compel the Elder Chevrolet Company to assign the certificate. Here, the entire consideration for the purchase price was given and no title was conveyed.

■ Rights plaintiff may have as to this motor car, but the right to foreclose a lien thereon it has not. It may have a right to recover the title and possession of the car from defendant Bailey County Motor Company, but such right is subject to an adjustment of equities. The lawful contract of March 18, 1940, has never been performed by plaintiff. Without performance or tender of performance it cannot recover thereon.

The decree of the court awarded the possession of the car to the Southwestern Investment Company. If right of possession it had this right was by a succession to the rights of the Bailey County Motor Company and those of Carl Stewart. Carl Stewart never had title to the car in question. He unquestionably had the right as against the Bailey County Motor Company to have a valid title transferred to him, subject, of course, to the mortgage for $366.30. We believe, however, he had the right to hold the possession of the car as against the Bailey County Motor Company until this right had been realized or vindicated by compensation. This right of possession probably would not include the right to use and operate same on the public roads.

By the transfer of the note of Carl Stewart the Southwestern Investment Company perhaps acquired the right to enforce same, at least the evidence all indicates it was a holder in due course. The enforcement of the chattel mortgage is another matter. In this connection, however, it is worthy of consideration that it was not a party to the mortgage, but acquired same as the purchaser of a negotiable note. Its acquisition of this note was not a violation of the law.

Stewart apparently abandoned the possession of the car to the Bailey County Motor Company, which in turn delivered same to the Southwestern Investment Company.

These transactions, we think, invested the Southwestern Investment Company with at least the right of possession of the Bailey County Motor Company, which right was to hold the car for an adjustment of equities.

In any event, plaintiff was not entitled to the aid of a court of equity to seize this car. The court, having improperly author-

ized the seizure of possession, properly restored it to the possessor.

We do not mean to hold that the judgment entered extinguished all rights plaintiff may have as to this motor car. We do not think it does. What we do hold is, it did not have the right to foreclose a mortgage lien against same.

The case of Foster v. Beall, supra, has some bearing by analogy on the case presented here. It is true, as we have pointed out, that this case was overruled in principle at least by the case of Hennessy v. Automobile Ins. Ass'n, supra. But, as has been pointed out, then there was no provision making the transfer void. Under the Act in force now such an attempted sale is declared void. In our opinion the overruling of this case by the Supreme Court does not impair the principle therein set forth, that one parting with the possession of a motor car, and where the attempted conveyance of the title is void, does not necessarily deprive him of all equities with reference thereto.

The case is affirmed.