### KNOX CITY v. MOTOR INV. CO.
No. 13360.

Court of Civil Appeals of Texas. Dallas.
Jan. 22, 1943.

Rehearing Denied March 12, 1943.

M. F. Billingsley, of Munday, and Shook & Shook, of Dallas, for appellant.

Nathaniel Jacks and Allen & Allen, all of Dallas, for appellee.

BOND, Chief Justice.

This is an appeal from the judgment of a district court of Dallas County, Texas, in favor of appellee, Motor Investment Company, for debt and foreclosure of an alleged chattel mortgage lien on a Ford motor vehicle, a truck chassis, alleged to have been, on August 5, 1940, executed by appellee R. M. Hedrick to appellee J. Earl Presley and thereafter in due course assigned to the Motor Investment Company. At the institution of this suit appellant, City of Knox City, was in legal possession of the truck under a purported sale from Hedrick. From the judgment, appellant alone appealed, assigning appropriate assignments of error. Appellees Motor Investment Company and J. Earl Presley, in briefs, countered with the proposition for damages against Wm. P. Boling and King H. Duggan, individually and as partners doing business as Boling-Duggan, only in the event they could not recover a judicial foreclosure of the chattel mortgage as to the City of Knox City. Boling-Duggan are not made parties to this appeal. The facts are undisputed and, as we view the record, the controlling question centers on the application of the Act of the 46th Legislature, now Art. 1436—1, Vernon's Ann. Texas Penal Code, known as the "Certificate of Title Act," to the facts of the case.

In so far as the Article affects liens and the registration of chattel mortgage liens on motor vehicles, we will not burden this opinion with setting out the Article in full, as pertinent sections of same appear in recent opinions of appellate courts of this state. Elder Chevrolet Co. v. Bailey County Motor Co., Tex.Civ.App., 151 S.W. 2d 938; Commercial Credit Co. v. American Mfg. Co., Tex.Civ.App., 155 S.W.2d 834. This statute (§ 1) relates the purposes and intent of the Legislature, the public policy of the state, to lessen and prevent theft of motor vehicles and to regulate the sale of encumbered motor vehicles and the enforced disclosure to the purchaser of any and all liens for which any such motor vehicle stands as security. In all the transactions by which the rights of the parties here are claimed to have been affected, there was an entire disregard or failure to comply with the statute.

The motor vehicle involved was new when sold on March 6, 1940, by the manufacturer, Ford Motor Company, to the dealer Boling-Duggan. The transfer was affected by the manufacturer executing to the dealer a "Manufacturer's Certificate" in conformity with Section 22 of the Act, evidencing no reservation of liens. On March 7, 1940, Boling-Duggan sold the vehicle to R. M. Hedrick, without its having previously been registered or licensed with the State Highway Department of the State of Texas, delivering to him the original manufacturer's certificate. On April 28, 1940, Hedrick took the vehicle to Knox City, Texas, with the manufacturer's certificate, and began the negotiation for its transfer to the City, exhibiting the certificate which showed no liens on the vehicle; and, on April 30, 1940, consummated the sale. The record shows that, at the time of the sale to the City, the note in suit and the chattel mortgage sought to be foreclosed were not in existence, had not been executed, and no lien or reservation of title or interest was of record and

none brought to the notice of the purchaser. The City purchased the vehicle solely on the representations of Hedrick and the disclosures in the manufacturer's certificate.

On July 17, 1940, R. M. Hedrick represented to Boling-Duggan that the original manufacturer's certificate, on which the sale of the truck to Knox City was consummated, had been lost and that he desired a second, or, as designated in the record, a "Duplicate Manufacturer's Certificate." Thus, in obedience to this request, Boling-Duggan secured from Ford Motor Company the duplicate or second manufacturer's certificate, which also showed no lien on the vehicle described. Then on August 5, 1940, Hedrick assigned the second or duplicate certificate and executed the note and mortgage in suit to appellee J. Earl Presley for $759; and on November 13, 1940, another note to Presley for $876. These notes and mortgages were subsequently assigned to Motor Investment Company who instituted this suit.

Under the provision of the Act (§ 24), the owner of any new motor vehicle, other than the manufacturer thereof, before selling or disposing of same, is required to register the vehicle and secure a "Certificate of Title" from the State Highway Department of Texas, which certificate shall show the date, make, motor and serial number of the vehicle, the number on the license plate currently assigned thereto, and "the names and addresses and dates of any liens on the motor vehicle, in chronological order of recordation." The statute (§ 33) further provides that no subsequent sale or transfer of such vehicle shall be made by the owner without the certificate of title having been issued showing that he is the owner and that there are no liens against such motor vehicle except such as are shown thereon; § 42 provides that "No lien on any motor vehicle shall be valid as against third parties without actual knowledge thereof or enforceable against the motor vehicle of any such third parties as the issuance of a certificate of title thereof, unless an application for a new title is made as prescribed in this Act and all first and subsequent liens noted by the Department thereon."; § 44, that "No lien on any motor vehicle to which a receipt or certificate of title has been issued shall be valid as against third parties without actual knowl-

edge thereof, or enforceable against the motor vehicle of any such third parties, unless the notation of said lien shall have been caused to be made on receipts and certificates of title on said motor vehicle, as provided in this Act."; and § 46, that "Only liens noted on a receipt or certificate of title shall be valid as against creditors of the mortgagor in so far as concerns the motor vehicle."

 Under the express provisions of this statute, and the undisputed facts, we think the purported chattel mortgage lien cannot be enforced against the motor vehicle in question; it was void ab initio because of the failure of title, and the lack of possession of the mortgaged chattel in the grantor. Hedrick acquired no legal title from the first purchaser Boling-Duggan, and had parted with possession before the lien transaction became a reality. The statute (§ 53) provides: "All sales made in violation of this Act shall be void and no title shall pass until the provisions of this Act have been complied with." Thus it will be seen that the legal title to the vehicle in question vested in Boling-Duggan by virtue of the "'Manufacturer's Certificate," and none passed to the subsequent purchaser Hedrick because of the lack of "Certificate of Title." If the mortgagor had no title to the vehicle, manifestly he could not pass title, or create a valid lien against the property until the provisions of the Act be complied with. The certificate of title evidences title after the motor vehicle has been sold for the first time, and all outstanding liens must be shown thereon, otherwise, they are void. While indirectly the title to the vehicle in question is involved here, yet the primary issue is the enforcement of the chattel mortgage. Assuming without deciding that the municipal corporation, Knox City, under §§ 4, 11 and 60 of the Act, was not exempt from the Act as to registration of automobiles used by governmental agencies, and its title had failed, yet the City was invested with the right of possession; hence Hedrick and those claiming a right or interest in the vehicle by, through or under him, could not deprive the City of that right without adjustment of equities. Elder Chevrolet Co. v. Bailey County Motor Co., Tex.Civ.App., 151 S.W.2d 938. Hedrick having no title, we fail to see how the mortgagee J. Earl Presley and his assignee, Motor Investment Company, have a claim for damages

against Boling-Duggan because of their assistance in securing the second or duplicate Manufacturer's Certificate, which reflected only the title from the first sale.

The judgment of the court below is affirmed, other than the foreclosure of the chattel mortgage on the vehicle in possession of appellant City of Knox City; and as against appellant, the judgment is reversed and here rendered in its favor.

Affirmed in part; reversed and rendered in part.

YOUNG, Justice (dissenting).

I disagree with the majority holding that under Article 1436—1, P.C. (Motors Vehicle Act), a municipality purchasing a motor vehicle in total disregard of the Act, acquires superior rights over a subsequent mortgagee who has fully complied with the Act in fixing his lien. As stated by Chief Justice BOND, the record facts are undisputed; however, a further detail thereof is necessary: On March 6, 1940, the truck chassis in question (which R. M. Hedrick later assembled into a fire truck and made the subject of contract with Knox City) was sold by Ford Motor Company to Boling-Duggan, local automobile dealer, by issuance of manufacturer's certificate, worded in form prescribed by the State Highway Department. The vehicle was on March 7th sold to Hedrick by Boling-Duggan, on credit, evidenced by chattel mortgage and note for $770. Boling-Duggan did not at this time transfer title to Hedrick by use of form attached to the original manufacturer's certificate, but merely "delivered" said certificate to its vendee, not noting thereon above lien. On July 17, 1940, Hedrick, doing business as Simplex Fire Apparatus Company, applied to J. Earl Presley (assignor of appellee Motor Investment Company) for cash to take up balance of aforesaid debt; representing that Interstate Securities Company, then owner of the note and lien, held manufacturer's certificate to the mortgaged property; at the same time representing to Boling-Duggan that he (Hedrick) had lost his first manufacturer's certificate, and requested a duplicate be issued to complete the Presley loan. Boling-Duggan at once wrote Ford Motor Company for another certificate covering the vehicle, which was furnished after notifying State Highway Department of the transaction. Boling-Duggan then executed the form of assignment attached to this manufacturer's certificate, together with sworn affidavit, to Hedrick, d/b/a Simplex Fire Apparatus Company, assignee, still failing to note thereon the debt just mentioned. However, Hedrick delivered all papers to Presley, who issued check for $650 to Interstate Securities Company and retained possession of the manufacturer's certificate, after marginal notation of his mortgage.

In the meantime (April 28), Hedrick appeared in Knox City, Texas, and made written proposal to the City officials for sale of the Ford chassis (then assembled into a fire truck), exhibiting the original manufacturer's certificate as evidence of ownership. The deal was completed by the City's acceptance of the written offer, authorizing $2,250 in warrants and delivery of same to Hedrick, who at once cashed the paper at a local bank. Appellant City admits noncompliance with Art. 1436—1, P.C. in the transaction, claiming exemption from the terms thereof under §§ 4, 11 and 60; resting its title to the truck solely upon Hedrick's representations, the contract of sale, and the consummation thereof by payment and possession.

The trial court established appellee's mortgage as superior to the claim of Knox City; and this judgment, the majority reverses and renders on grounds stated in opinion on file. I respectfully suggest error in the majority reasoning and construction of Art. 1436—1, P.C., at least in the following particulars: First, in holding that the dealer, Boling-Duggan, passed no title to Hedrick which he could mortgage, because of their failure to procure and furnish a certificate of title, in face of plain terms of § 27 and Art. 6675a—2, limiting the requirements of registration and license (i.e., securing certificate of title) to owners of vehicles "used or to be used upon the public highways of this State"; § 4 of the Act excludes a dealer from the definition of owner; § 22 further authorizing dealers, such as Boling-Duggan, to transfer a motor vehicle in any first sale and before same is subject to registration and license, by original manufacturer's certificate. By this method, on July 17, Boling-Duggan lawfully assigned all right, title and interest in the truck to Hedrick, who, in turn, by virtue of § 41, was free to fix a valid lien thereon by noting on the certificate the date, name and address of the mortgagee.

Second, the majority has erred, in my opinion, in designating all transfers of the truck, after purchase from Ford Motor Company, as subsequent sales, impliedly concluding thereby that motor vehicles are susceptible of only one first sale. Here, it is apparent that the Legislature has dealt with automobiles in two phases, (a) before same are subject to registration and license, and (b) after such time, when Art. 6675a—1, et seq. becomes equally applicable to cars used or to be used by owners upon the public highway. All dealings under the first classification just noted are evidenced by manufacturer's certificates and are deemed "first sales" (§ 7); as the Department prescribes forms attached thereto, indicating "each subsequent transfer between distributor and dealer, dealer and dealer, and dealer to owner." (§ 22). The manufacturer's certificate in this record has three such assignment forms for legal transfer of a vehicle that has not been previously registered or licensed. A certificate of title is not required upon cars until after they become subject to registration and license (Art. 6675a—2) in transactions constituting "subsequent sales." It follows that there may be numerous first sales of motor vehicles, as well as subsequent sales; and the majority has mistakenly characterized the assignment from Boling-Duggan to Hedrick by manufacturer's certificate as void and violative of the Motors Vehicle Act. Under the majority interpretation, all cars in showrooms of dealers become "used cars" under § 10, as motor vehicles that have become the subject of a first sale; thus compelling dealers to register and license their merchandise (procuring certificates of title) before selling at retail. To the contrary, I find that § 27 of the Act and Art. 6686, R.S., Vernon's Ann.Civ.St. Art. 6686, exclude dealers from the certificate of title requirement even as to motor vehicles subject to registration; the latter article providing that any dealer "may, instead of registering each vehicle * * * apply for registration and secure a general distinguishing number * * *"; and § 28 expressly enabling a dealer to convey by manufacturer's certificate, thereby marking the transaction a first sale.

Third, no title whatever passed to Knox City; for, aside from the City's claim of exemption under §§ 4, 11 and 60, of the Act, Hedrick's written proposal was wholly inoperative as a transfer. It did not describe the assembled truck by motor or serial number; and, in the transaction, appellant City even permitted Hedrick to retain indicia of ownership sufficient, under the Act, to negotiate a subsequent mortgage. Article 1436—1, P.C., seems to be the sole method set up in this state whereby motor vehicles may be legally dealt with by anyone. This would certainly include municipalities in the purchase of such property. And the provisions of § 53, that all sales of motor vehicles shall be void without compliance with the Act is plainly applicable to vendor, Hedrick. It is unnecessary to discuss the exempt sections just noted, for their effect as a whole seems merely to relieve a municipality from title certificate requirements, unless the city vehicle be sold to one otherwise amenable to the Act. § 60. It is my opinion that, to secure valid title to their motor vehicles, the exempted class (such as municipalities) must not only comply with applicable provisions of Art. 1436—1, P.C., but also, under 6675a—3, Vernon's Statutes, must register same with the State Highway Department and receive a designated license plate, though without payment of fee. Appellee's claim of injury is directly referable to the failure of appellant City in this regard.

Nor does appellant possess rights superior to appellee's, of which it can require adjustment in equity. As to the mortgagee, the possession of Knox City was illegal. Elder Chevrolet Co. v. Bailey County Motor Co., Tex.Civ.App., 151 S.W.2d 938; it having purchased the truck regardless of the statute, and the subsequent lien having validly attached.

It may well be assumed that neither party hereto has intentionally been at fault; but the trial court was amply warranted, under the facts and circumstances of this case, in applying the following general rule: "Our courts have uniformly held that where one of two persons, equally entitled to consideration, as far as their purposes are concerned, must suffer from the delinquency of a third, the loss more properly falls upon him, who, having readily at hand the means of protection, has failed to avail himself of them. Parma v. First Nat'l Bank of Cameron, Tex. Com.App., 63 S.W.2d 692." Sackenreuther v. Winston, Tex.Civ.App., 137 S.W.2d 93, 97.

I think the majority erred in holding that lack of possession in the mortgagor

Hedrick rendered appellee's mortgage "void ab initio." It has already been shown that title to the truck remained in Hedrick perforce of appellant's noncompliance with the Act and related provisions of our civil statutes. Thus, appellee's lien must prevail over the nonexistent rights of the possessor, Knox City, and it is not essential to the validity of a mortgage that the chattel be in actual possession of the mortgagor. 9 T.J., Chattel Mortgages, § 34, p. 120; 14 C.J.S., Chattel Mortgages, § 27, p. 634; Yeager v. Laredo Nat. Bank, Tex.Civ.App. 146 S.W.2d 796. The rule just cited bears particularly upon Art. 1436—1, which is expressly given a liberal interpretation, so that the operation thereof may "materially safeguard dealings in motor vehicles and using the same as security * * *."

The instant situation is quite analogous to Commercial Credit Co. v. American Mfg. Co., Tex.Civ.App., 155 S.W.2d 834, 840; appellant there being in the same position as Presley and Motor Investment Company here. The language of Judge Speer is very pertinent: "As harsh as it may seem, when appellant has neglected no duty encumbent upon it, and defendants have acquired a car from one who had title only subject to appellant's rights, if either must lose it should be the one who, though without intention of doing a wrong, accepted a doubtful title."

The trial court's judgment should have been, in all respects, affirmed.