**ALAMO CAS. CO. v. WILLIAM REEVES & CO. et al.**

No. 15414.

Court of Civil Appeals of Texas.
Fort Worth.

March 13, 1953.

Rehearing Denied May 22, 1953.

Ford Club Coupe automobile, paying a consideration to such former owner and assuming a balance owing on a note to Reeves & Company. Fire, theft and collision insurance policy contract No. 335532 of the Alamo Casualty Company had been in effect upon the automobile in the Insurance Company's policy contract with the former owner. The coverage of this policy was transferred by the Insurance Company over to Hollis Holliday. In the face of the policy, protection under the mortgage clause extended only to Reeves & Company upon the unpaid balance of the note. During the policy period, to wit: on or about March 15, 1952, the car, while in the possession of U. J. Harwell at his home, was stolen. Harwell, a minor, is Holliday's brother-in-law. The automobile was recovered approximately one week later in a totally demolished condition. At the time, there was a balance owing William Reeves & Company on its note in the sum of $140.

Subsequent to date of the loss, Hollis Holliday made claim upon the Alamo Casualty Company for the proceeds of the policy under its theft provisions. The Insurance Company proceeded to make an investigation, part and parcel of which consisted in taking statements from Holliday and Harwell. In the statement it secured from Harwell, he stated in substance: "I am nineteen years of age, single, and reside at 1300 Denver in Fort Worth with my mother, Mrs. Jessie Coggins, telephone number NOrthcliff–4328. I am not employed at the present time. I am buying a 1940 Ford coupe through my brother-in-law's name, as I am not old enough to buy a car in my own name. My brother-in-law's name is Hollis Holliday, 1319 Beach Street. The car is financed through Reeves Finance Company in Fort Worth and I still owe $140 on it. On March 14, 1952, my car was stolen from the driveway of my home between the hour of 12:00 midnight and 3:00 a.m. I had parked my car there at midnight and had gone riding with a friend of mine." The statement taken from Holliday read in part as follows: " 'The note with Reeves and the title are in my name. This car was actually purchased for my brother-in-law, U. J.

Stone, Agerton, Parker & Kerr, and Walter E. Jordan, Fort Worth, for appellant.

H. C. Ray, Fort Worth, for appellees.

MASSEY, Chief Justice.

From a judgment for plaintiffs to collect benefits under an automobile theft insurance policy, the defendant Insurance Company appealed.

Affirmed.

On November 8, 1951, Hollis Holliday purchased from a former owner a 1940

Harwell, 1300 Denver, but as he is under age and subject to draft call, I had it put in my name.' "

The Insurance Company denied liability for the payment of the claim filed by Holliday and suit was filed by Holliday and the Reeves Finance Company, as plaintiffs, against the Alamo Casualty Company, as defendant, the Finance Company seeking the $140 owed it upon the note and Hollis Holliday seeking the amount of loss he suffered in excess thereof.

The Insurance Company set up as defense to the suit so filed the contention that at the time of the purchase of the automobile by Holliday from the former owner, (which was also the time of the transferring of the coverage of the insurance policy over to him upon the automobile) he was actually acting upon the purchase as the agent for U. J. Harwell, his minor brother-in-law, and not for himself. If such was true, under the provisions of the policy the Insurance Company was entitled to avoid any obligation thereunder.

The defendant Insurance Company plead alternatively that there existed, prior to the date of the loss by theft, an agreement between Holliday and Harwell to the effect that Harwell would pay to, or reimburse, Holliday the amount of money paid by Holliday for the automobile, whereupon Holliday would transfer the title to the automobile to Harwell. It contended that this agreement constituted a conditional sale or constituted an encumbrance upon the automobile in question, which entitled the company to avoid liability under the insurance policy under an express exclusion therein to the effect that there would be no liability under the policy if the automobile described therein was the subject of a conditional sale or was encumbered by lien other than that disclosed in the face of the policy. The Insurance Company contended that possession of the automobile had passed to Harwell with transfer of title to follow upon performance of conditions subsequent, to wit: payment or reimbursement by Harwell to Holliday of the purchase price Holliday had paid for the same. It is to be noted that in depositions taken from Holliday and Harwell, subsequent to the filing of the suit but prior to the trial, Holliday testified that subsequent to the time of his purchase of the automobile he told Harwell that after the car was paid for he would make a present of it to Harwell if he (Holliday) did not need it anymore. That Harwell. in turn said he would pay him for the car. Harwell, in his deposition, said that Holliday agreed to allow him to pay Holliday for the car and that he (Harwell) intended to do this. These parts of the deposition were proven upon the trial. No testimony therein related to the time or time limit for delivery of the possession of the automobile, and none to the time limit for performance by Harwell. No other evidence adduced before the jury during the course of the trial related to these times or time limits.

Trial was to a jury and by evidence and stipulations a prima facie case of liability having been established, the court submitted to the jury, in addition to plaintiffs' issues establishing the amount of the loss, the following defensive issues, based upon appellant's contentions:

"Question No. 3: Do you find from a preponderance of the evidence that Hollis Holliday purchased the 1940 Ford Club Coupe in question from C. H. Sanders, Jr., for his brother-in-law, U. J. Harwell? Answer 'Yes' or 'No'.

"Answer: No.

"Question No. 4: Do you find from a preponderance of the evidence that Hollis Holliday was not the sole owner, as that term is herein defined, on or about March 15, 1952, of the automobile insured? Answer 'He was the sole owner' or 'He was not the sole owner'.

"Answer: 'He was the sole owner' "

(Note: "Sole Ownership" was defined as meaning that no other person has any interest in the property as owner.)

Based upon these answers by the jury to said special issues, coupled with a finding by the jury of loss (within the measure of damage provisions of the policy) of $375, the court entered judgment in said amount in favor of Hollis Holliday and William Reeves & Company, the plaintiffs, as against the defendant Insurance Company,

from which judgment the defendant appealed.

As regards the alternative defense plead by the appellant Insurance Company, had the issue been raised in the evidence it would have been entitled to defeat the claim of the appellees, even though Holliday originally took title for himself alone, if it could have secured an affirmative finding by the jury that an agreement existed between Holliday and Harwell at the time of the theft of the automobile, which, under the law, would constitute a conditional sale of the automobile, or an encumbrance upon the same. This was a provision in the policy contract. There appearing to have been no objection to the form of the issue, and question No. 3 disposing of the primary defense appellant relies upon, it was apparently upon this alternative theory that the court submitted, unconditionally, question No. 4 to the jury.

However, the evidence introduced before the jury relating to the alternative defense of the appellant was undisputed to the effect that Harwell had never at any time paid any money to Holliday for or upon the automobile. It is noted that even under the statements of Holliday and Harwell, executed to the appellant's adjuster before the suit was filed, and in their depositions taken thereafter but before trial, there was no showing as to there ever having been a transfer of possession, coupled with or based upon any express or implied agreement made as to the time or time limit within which consideration should be paid by Harwell to Holliday for the automobile, and no consideration was shown to have been paid or become due.

■ In Texas, the term "conditional sale," means (as regards sales other than those in which provision is made for repurchase) a sale wherein possession is delivered to the buyer but title is reserved to the seller until the fulfillment of the condition. 37 Tex.Jur., p. 301, sec. 132. Further, a condition subsequent is one which operates upon some estate (as of ownership) already created and vested, and which, if not performed, may defeat it at the election of the grantor. 10 Tex.Jur., p. 344, sec. 198.

■ "Ownership" is sole when no other has any interest in the property as owner, and is unconditional when the title is not limited or affected by any condition. Hicksbaugh Lumber Co. v. Fidelity & Casualty Co. of New York, Galveston 1944, Tex.Civ.App., 177 S.W.2d 802.

■■ Where a buyer has paid for and acquired some interest in an automobile from a seller, the seller cannot be the sole owner of the automobile. Hicksbaugh Lumber Co. v. Fidelity & Casualty Co. of New York, supra. It follows that where nothing has been paid to an automobile owner for an interest therein and no interest has been otherwise acquired in the automobile, the owner thereof is the sole owner.

■ As applied to automobiles, it has been correctly stated by the Louisiana Court of Appeals in 1951 that "A test of true ownership as fixed by the Texas Courts is set forth as being a legal right to compel the assignment and transfer of the certificate of title to a vehicle. * * *" Churchman v. Ingram, La.App., 56 So.2d 297, 302.

■ Determination of ownership is a conclusion of law based upon established facts. In a case where ownership, legal or equitable, sole or less than sole, is an issue between the parties, their statements as to ownership can constitute no more than an expression of their conclusions as to such. The statement which was made by Harwell to the appellant's insurance adjuster, to the effect that he was buying the car in his brother-in-law's name and still owed $140 on it, does not relate to the alternative defense asserted by appellant, but would relate only to the original defense that he plead.

■ In Texas, where the transaction is one wherein the present passage of title is not contemplated, it is not a sale but may be construed to be a contract to sell. The essence of the sale is the present transfer of title to the property to the possessor thereof. Elder Chevrolet Co. v. Bailey County Motor Co., El Paso 1941, Tex.Civ. App., 151 S.W.2d 938. By this term "title" is used as indicative of property or owner-

ship, and not as meaning a Certificate of Title. In our opinion, a proper construction, under the facts of this case, would be that the agreement claimed to exist between Harwell and Holliday could be no more that a contract to sell the automobile.

Hence, appellant's alternative contention has no merit and he was entitled to no issue thereon for the reason that no evidence raised the question of there ever having come into existence as between Holliday and Harwell, subsequent to the time of the purchase of the automobile, an agreement binding upon such parties, and between them, of the character of a contional sales contract, or which constituted an encumbrance of the nature of lien of any kind upon the automobile. At the most was there shown a bare contract to sell (which was not and could not be a matter of avoidance by the insurance policy), as opposed to sale, no condition of which was ever met by Harwell by which he acquired an interest (of ownership) in the automobile, if none he had from the inception of the purchase by Holliday. Thus, any special issue submitted to the jury on this question was not supported by the evidence and even had the appellant obtained a favorable finding thereon it would not have supported a judgment in his behalf.

Likewise, for this same reason refusal was proper of the issues requested by appellant, and of which refusal it complains, as to whether Harwell and Holliday had entered into a conditional sales contract, or into a contract to sell, and as whether the automobile was subject to encumbrance other than to the Reeves Company. And the argument complained of by appellant, relating only to the question of ownership as indicated by the Texas Certificate of Title to the automobile, becomes immaterial as to the issue of agency in the purchase.

Hence, the sole question to be resolved by the jury related to the character of the initial transaction and as to whether in making the purchase of the automobile Holliday was acting for himself or as an agent for Harwell, as appellant contended.

This issue was raised in the evidence, particularly in view of the statements regarding the circumstances of the purchase made by Holliday and Harwell antecedent to the filing of the suit and to the denial of liability by appellant upon the claim filed.

In their oral testimony upon the trial of the lawsuit, both Holliday and Harwell testified directly to the contrary of the statements in question. Additionally, Harwell testified that he had never paid anything, and Holliday testified that he had paid everything which had been paid, upon the purchase of the automobile and subsequently to the Finance Company on the note.

In the case of Coxson v. Atlanta Life Ins. Co., 1944, 142 Tex. 544, 179 S.W.2d 943, 945, the court held, with reference to a question of similar character, "* * * statements which, if true, would relieve the insurer of liability, are not necessarily conclusive against the claimant since such statements make only a prima facie case against the claimant which may be explained, repudiated or corrected by showing the true facts contrary to the preliminary proofs furnished the insurer. [Citing cases.]" McCormick & Ray, Texas Law of Evidence, p. 634, sec. 495. The subject about which the admissions related, agreements between the parties, predicate to and co-incidental with the "acquisition of ownership," was explained, repudiated or corrected by the witnesses who had made such admissions in the course of their testimony, and there was an issue made upon fact. The burden upon the contention and upon any special issue submitted on the question was upon the appellant. We cannot say that the jury went against the overwhelming weight of the evidence by the refusal to find for the appellant upon this issue.

Having arrived at the foregoing conclusions, it remains to be decided whether the case should be reversed, as contended by the appellant, for the reason that the attorney for the appellees committed error in his cross-examination of appellant's witness, William H. House.

After appellees had rested their case in the trial court, appellant put on his sole witness, Mr. William H. House, employed at the time by appellant as branch manager,

but who, at the time the particular insurance policy in question was issued, was employed as appellant's chief underwriter. The witness testified with reference to the acceptability or non-acceptability of the risk represented by the insurance policy had the insurer been aware of the fact that a minor owned or had any right or interest in the automobile insured. Appellant's counsel on direct examination asked the witness if the name of Alamo Casualty Company had been changed to General American Casualty Company. It appears undisputed that there had been such a change of name made by the company between the time the insurance policy was issued and the trial upon it was held. On cross-examination the attorney for appellees asked the witness why Alamo Casualty Company had changed its named to General American Casualty Company. The witness answered the question to the effect that the reason was to simplify operational problems. Counsel then asked the witness, "Isn't it a fact the Alamo was sued so much that they had to change their name?" At this stage, as disclosed by the statement of facts, Mr. Jordan, attorney for the appellant, objected and the following occurred:

"Mr. Jordan: Your Honor, I object to that, strenuously object to that.

"The Court: I will overrule it if he knows.

"Mr. Jordan: Note our exception, Your Honor. That is prejudicial—

"The Court: Overruled.

"By Mr. Ray:

"Q. Answer the question. A. No, I wouldn't think so.

"Mr. Jordan: Note our exception.

"By Mr. Ray:

"Q. Haven't there been several suits filed against the Alamo for the last six months?

"Mr. Jordan: If the Court please, I do want to object to that. I believe that is highly improper.

"Mr. Ray: Your Honor, they brought out there has been a merger. We have got a right to see whether there was a merger.

"A. I have just explained to you why it was a merger. All insurance companies are sued frequently.

"The Court: Overruled.

"Mr. Jordan: Note our exception.

"By Mr. Ray:

"Q. They don't all change their names, do they, after they are sued?

"A. Suits had nothing to do with us changing our name."

As regards the inquiry as to whether the change of name was occasioned by the number of suits filed against the witness' principal, there would have at least been a lawful basis for the asking of the questions under the theory that House might have made a statement to the effect that Alamo Casualty Company's name was changed because of the number of suits which had been filed against it, and upon basis of which his testimony could be impeached. Of course, the proper predicate for the asking of such a question with impeachment of the witness as its possible object was not laid, but the objection of appellant was not grounded upon this being a part of its objection. Even this would not necessarily be the exclusive theory of admissibility, and, among others, the proof attempted might have been to demonstrate some acts or conduct of appellant on other occasions which could be shown to have a relevant and material bearing upon the facts in issue in the trial court. 20 Am.Jur., p. 281, sec. 303.

The objection was general, and so being it would support an assignment on appeal only if the question in itself was patently improper for any purpose. McCormick & Ray, Texas Law of Evidence, sec. 16. The application of the rule has been stated thus: "The only modification of this broad rule is that if on the face of the evidence, in its relation to the rest of the case, there appears no purpose whatever for which it could have been admissible, then a general objection, though overruled, will be deemed to have been sufficient." Wigmore on Evidence, 3rd Ed., sec. 18. We cannot say that the trial court abused the discretion with which it was endowed by allowing the form of inquiry resorted to by counsel. It

must be borne in mind that the witness interrogated was an adverse witness to counsel, under cross-examination, and counsel's right to cross-examine him in order to elicit answers tending to discredit him is broader than the right to contradict what the witness has said in answer to the question. Great latitude is allowed to the cross-examiner and in framing the questions it is not necessary that his purpose should be apparent therefrom. That such purpose should be concealed from the witness and the party who called him is quite legitimate. 45 Tex.Jur., p. 12, sec. 182.

As regards the general objection made to the question counsel asked the witness about whether there had been suits filed against the appellant within the six months immediately preceding it is noted that though the Court overruled the objection, counsel did not further seek an answer to the question to which the objection was leveled, but proceeded to ask another and different question, in the course of the answer to which the witness volunteered information which did answer the question. This procedure would have obviated the error, if any, but in any event we think the same rule would apply as to the preceding objection, and that the question would be within the trial court's discretion to allow for all the same reasons.

All assignments of error are overruled and the judgment of the trial court is affirmed.

On Motion for Rehearing.

RENFRO, Justice.

As shown in the original opinion, appellees' attorney asked the following questions of appellant's witness House:

"Isn't it a fact the Alamo was sued so much that they had to change their name? Haven't there been several suits filed against the Alamo for the last six months? They don't all change their names do they after they are sued?"

The questions were improper and should not have been asked by appellees' counsel. The court erred in overruling appellant's objections to same and in failing to instruct the jury to disregard said questions.

Viewing the record as a whole, however, we think reversible error is not shown within the provisions of Rule 434, Texas Rules of Civil Procedure.

The motion for rehearing is overruled.

BOYD, J., concurs.

MASSEY, Chief Justice.

In the instruments filed by the parties relating to the motion for rehearing of the appellant, it appears that the language of the opinion is susceptible of being misunderstood at the first paragraph of the opinion relating to the question of the admissibility of the question asked appellant's witness William H. House as to whether it was not a fact that the appellant Insurance Company was sued so much that it had to change its name. It is noted that at the point where the opinion reads " * * * there would have at least been a lawful basis for the asking of the questions under the theory that House might have made a statement to the effect that Alamo Casualty Company's name was changed because of the number of suits which had been filed against it, and upon basis of which his testimony could be impeached," it would be reasonable to interpret the language as meaning that the witness might have testified in response to the question that such was the reason for the change of name. Such interpretation would not accord with the statement as to the law meant to be pronounced. The "statement" considered as the one the witness House "might have made," was intended to mean such a statement as might have been made by him at a time prior to and other than at the time at which he was testifying. The part of the sentence in question will be clarified by changing it to read, " * * * there would have at least been a lawful basis for the asking of the questions under the theory that *at some prior occasion* House might have made a statement to the effect that Alamo Casualty Company's name was changed because of the number of suits which had been filed against it, and upon basis of which his testimony could be impeached." Had the wit-

ness House *upon some prior occasion to the occasion on which his testimony was being given during the trial* made a statement to the effect that the Alamo Casualty Company did change its name because it was sued so much or so often that its opportunities for writing business under that name were suffering, certainly such prior statement could be shown to have been made by him by the adverse party when, as had occurred in this case, he had testified without objection that the reason for the change in names was that of convenience of business operations. Under such a circumstance certainly the witness could be impeached, even though in the process of such impeachment his employer, for whom he was testifying, would suffer as necessarily incident to the subject matter (already in the case without objection by his employer, party defendant in the trial court) upon which the impeachment would occur. In the state of the record at time the events complained of occurred, it would be improper for any court to arbitrarily assume that the witness House had never at any prior time made any damaging statement regarding the Alamo Casualty Company, but for the purposes of supporting the question the court should consider that perhaps he had made such damaging statement and such was being shown on cross-examination.

Appellant's motion for rehearing is overruled.