FERRIS v. LANGSTON et al.   (No. 8788.)

(Court of Civil Appeals of Texas. Dallas. April 14, 1923. Rehearing Denied June 16, 1923.)

**1. Sales ⟐201(1)—Essentials to transfer of title to personalty in absence of statute stated.**

In the absence of a statutory requirement that more be done, it is not essential to the transfer of title to personal property that anything more than mere delivery of it to the purchaser be made with the intention of passing title.

**2. Sales ⟐48½, New, vol. 13A Key-No. Series—Penal statutes relating to sale of secondhand automobiles held to invalidate sales not complying therewith.**

Pen. Code (Complete Tex. St. 1920) arts. 1358d to 1358g, inclusive, relating to the sale of secondhand automobiles, held mandatory and to invalidate every sale not attended by the passing of a bill of sale and a transfer of the tax receipt, not only as respects the transferee, but also as respects third persons dealing with transferee such as mortgagees or purchasers.

**3. Evidence ⟐86—Presumption that every person knows law conclusive.**

The presumption is conclusive that every person knows the mandates of the law.

**4. Sales ⟐48½, New, vol. 13A Key-No. Series—Owner of automobile delivering it to dealer for sale held to have acted within statute relating to sale of secondhand cars.**

Where one, desiring to sell his secondhand automobile placed it in the hands of a dealer but refused to deliver the tax receipt or executed bill of sale until he had received full payment, held, that his acts were in accordance with Pen. Code (Complete Tex. St. 1920) arts. 1358d to 1358g, relating to the sale of secondhand motor vehicles, and that, after the sale of the car by the dealer and negotiation of a note and mortgage received by him in payment and subsequent insolvency of the dealer, the owner, in an action to recover the car and cancel the mortgage lien thereon, was not impeded by the rule that the courts will leave parties to an unlawful transaction where they found them.

**5. Bills and notes ⟐337—Bank accepting note and mortgage given in payment for secondhand automobile unlawfully sold held not in position to enforce payment notwithstanding invalid sale.**

Where a dealer having possession of a secondhand automobile, without authority to sell it until he had paid owner therefor, delivered the car to another, accepted partial payment in cash together with a note and mortgage securing the balance without delivery of a bill of sale or transfer of the tax certificate as required by Pen. Code (Complete Tex. St. 1920) arts. 1358d to 1358g, and thereafter negotiated the note and mortgage to a bank, held, that the bank, after insolvency of the dealer and proceedings by the owner of the car to recover it and cancel the mortgage lien against it, was not within the rule that a negotiable instrument in the hands of a bona fide holder is enforceable, even though executed as a part of a transaction expressly prohibited by law, since at the time of its acceptance of the note and mortgage, the tax records, of which it was bound to take notice, indicated that the car had not been lawfully transferred but still remained in the original owner's name.

On Motion for Rehearing.

**6. Appeal and error ⟐835(2)—Demand for relief held too late when first made on motion for rehearing after judgment on appeal.**

Where a secondhand automobile dealer, having possession of a car without authority to sell it until he had paid owner therefor, made a sale without complying with Pen. Code (Complete Tex. St. 1920) arts. 1358d to 1358g, accepted a partial payment together with a note and mortgage for the balance, paid to the owner the principal part of the payment received, negotiated the note and mortgage to a bank, and thereafter became insolvent, held, in an action by the owner to recover the car and cancel the mortgage lien thereon, that a demand for the return of the partial payment received by him came too late to warrant relief when made for the first time on a motion for rehearing after judgment for plaintiff on appeal.

Appeal from Dallas County Court; Frank G. Harmon, Judge.

Action by F. A. Ferris against A. L. Langston and others. Judgment for defendants, and plaintiff appeals. Reversed and rendered.

Whitehurst & Read and L. H. Betts, all of Dallas, for appellant.

Cockrell, McBride & O'Donnell and Holland, Bartlett & Thornton, all of Dallas, for appellees.

HAMILTON, J. Appellant instituted this suit for the recovery of the title and possession of an automobile against appellee Langston, and for the cancellation of a mortgage held by appellee Dallas County State Bank, which was executed upon the automobile to secure the payment of a promissory note.

The judgment appealed from is based upon an instructed verdict given the jury, before which the case was tried below, to find for the appellees.

Both by pleadings and proof appellant contended that he left the automobile with McCallon Auto Company, a dealer in secondhand cars in Dallas, for sale. His position is,

as revealed by the pleadings and proof in his behalf, that a complete sale was not to be effected by McCallon Auto Company until he received the price agreed upon between him and it he was to receive for the car, and that for this reason he refused to execute a bill of sale for it and indorse and deliver the tax receipt issued to him upon it, but withheld the bill of sale and receipt to await completion of payments. McCallon made two payments to him aggregating $400. The price agreed upon between him and McCallon Auto Company at which the car was to be sold was $1,000. Appellant testified that he thought McCallon, when the payments were made, intended to buy the car himself. McCallon Auto Company made a sale of the car to appellee Langston for the agreed consideration of $1,600. Langston made a cash payment of $500 at the time of the sale and executed two notes for the balance, one of the notes being for $1,000 and the other note for $100. Out of the $500 cash payment made by him it seems that appellant received the aggregate sum of $400 from McCallon, which was all that was ever paid him. Langston paid to McCallon Auto Company the $100 note in four payments, one of $50 and two of $25 each. The $1,000 note was secured by a chattel mortgage executed to McCallon Auto Company by Langston. This note and mortgage were indorsed to the Dallas County State Bank for a valuable consideration before the maturity of the note. During the negotiations between Langston and McCallon Auto Company, nothing was said about the ownership of the car, and Langston, presuming it belonged to McCallon, made no inquiry as to the matter and demanded neither bill of sale nor indorsed tax receipt.

McCallon Auto Company appears to have been owned and controlled by a man by the name of McCallon, who failed in business after all these transactions were had and then left Dallas. His whereabouts became unknown and appellant could not locate him. Subsequent to the foregoing events, appellant made inquiry and through investigation undertook to locate the automobile. The mortgage executed by Langston to McCallon Auto Company and transferred to Dallas County State Bank, as above stated, was of record in the mortgage records of Dallas county, but appellant made no investigation of these records during the period of inquiry and investigation through which he sought to ascertain into whose possession the car had passed. Shortly before the institution of the suit, he discovered that the mortgage was of record, and also learned of the transactions between McCallon Auto Company and Langston and between McCallon and the appellee bank.

As above stated, at the time of the sale to Langston nothing was said between him and McCallon Auto Company as to who owned the automobile, and he obtained no bill of sale, nor was any effort made to acquire the indorsed registration tax receipt. The bank had no actual knowledge, at the time the note and mortgage were transferred to it, that a bill of sale and the indorsed tax receipt had not been delivered to Langston, although the tax collector's records continued to reveal the ownership of the car in appellant.

Appellee Langston defends against the claims asserted by appellant on the grounds that appellant delivered the automobile to McCallon Auto Company, which was engaged at the time in buying and selling used automobiles, and permitted McCallon Auto Company to keep the car in its possession and advertise it for sale as its own property, thus clothing it with the indicia of ownership and estopping himself by reason of these acts from asserting title to the property. Appellee bank makes the same contention, and also contends that it was an innocent purchaser for value before maturity and knew nothing of the transactions which preceded the execution and delivery of the note and mortgage.

Recognizing the respective transactions between McCallon Auto Company and Langston and between McCallon Auto Company and Dallas County State Bank to have been made in good faith and without actual knowledge of any infirmity, appellant seeks to vitiate them and deprive them of their force of validity by invoking articles 1358d to 1358g, inclusive, of the Penal Code, which are comprehended in chapter 138 of the General Laws of Texas enacted by the Thirty-Sixth Legislature for the prevention of the theft of motor vehicles.

By these provisions of the Penal Code it is made unlawful for any person, acting either for himself or another, to offer for sale or trade any secondhand motor vehicle without at the time having in his actual physical possession the tax collector's receipt for the license fee issued for the year in which the offer to sell or trade is made. It is also provided that it shall be unlawful to sell or trade any secondhand motor vehicle "without transferring by indorsement the name of the person to whom said license fee receipt was issued by the tax collector and by physical delivery of the tax collector's receipt for license fee for the year that the said sale or trade is made."

It is further provided that—

"It shall be unlawful for any person, acting for himself or another, to buy or trade for, any secondhand motor vehicle in this state without demanding and receiving the tax collector's receipt for the license fee issued for said motor vehicle for the year that said motor vehicle is bought or traded for."

The act also makes it unlawful for any person, either acting for himself or as agent, in any wise to transfer any secondhand

motor vedicle .without delivering to the purchaser a bill of sale in duplicate, the form of which bill of sale is prescribed in the act; one copy to be retained by the purchaser or transferee as evidence of title, and the other to be filed by him with the county tax collector as an application to transfer the license from the name of the seller into his name.

Violation of the act is made a misdemeanor and punishment is prescribed.

[1] It is, of course, not essential to the transfer of title to personal property that anything more than mere delivery of it to the purchaser be made with the intention of passing title in the absence of a statutory requirement that more be done. But the Legislature possesses the unqualified and unquestionable right and power, not only to prescribe methods of transferring a particular kind of personal property, but it also possesses the full power by valid enactment to render compliance with such methods an essential to the validity of such transfer of the class of personal property affected; that is, to predicate validity of title upon such compliance.

[2] The determination of the various contentions relied upon by the respective parties rests upon the effect to be given the above-noticed statutory provisions relating to the transfer of secondhand cars. Appellant contends that compliance with the requirements of the enactment by the execution and delivery of a bill of sale and the indorsement and delivery of the current tax receipt are mandatorily essential to the passage of title to secondhand cars, and that any transaction for the acquisition of such cars otherwise than in pursuit of this method is void and conveys no title whatever.

Appellees insist, in opposition to this view, that the statute merely makes unlawful any sale effected without compliance with these requirements, but does not, either by express terms or by unavoidable implication, declare the transaction to be void ab initio, and accordingly, under well-determined rules of construction generally applied, the sale to Langston was not void, but under the circumstances of the case and appellant's conduct reflected by the facts must be held to have conveyed a valid title, and the mortgage must also be declared a lawful and enforceable instrument in appellee bank's hands as an innocent purchaser.

The purpose of the law from which we have quoted above was to prevent the theft of automobiles. This purpose is explicitly expressed in the caption of the enactment. By the strict and universal requirement of its observance alone can the manifest policy of the statute be given effect. The intent of the law was, we think, to render every sale not attended by the passing of a bill of sale and a transfer of the tax receipt invalid. Observance of those provisions, coupled with the filing of the tax transfer and payment of the transfer fee, as required by the law, gives public notice of every car's ownership, and the effect of the law is not merely to punish as an offense transgression of its requirements but also to render invalid any sale at variance with them. Articles 1358d to 1358g, inclusive, Penal Code of Texas; Overland Sales Co. v. Pierce (Tex. Civ. App.) 225 S. W. 284; Goode v. Martinez, (Tex. Civ. App.) 237 S. W. 577; Foster v. Beall (Tex. Civ. App.) 242 S. W. 1117.

[3] None of the above-cited cases expressly declares a transfer of a car in noncompliance with the requirements of the above articles of the statute to be void as to third parties dealing with the transferee, but the effect of each of the decisions is so to hold. Besides, the records of the highway department and of the tax collector's office impute notice of ownership of any motor vehicle to be in the person these records designate as owner, and carry to all who deal in relation to a given car constructive notice that its ownership is in such designated person. Furthermore, the very terms of the law impose the duty upon every person who attempts to acquire title to a motor vehicle by transfer from another to demand and receive both a bill of sale and a transfer of the current tax receipt properly indorsed. This duty cannot be avoided by recourse to any alternative. The presumption is conclusive that every person knows the mandates of the law by which the conduct of all persons is to be governed in any particular character of transaction, and the age-old precept that ignorance of the law excuses no man estops the claim that Langston was induced by McCallon Auto Company's display of the car for sale, with appellant's consent, to presume that McCallon Auto Company could pass title to it.

[4] Appellant, if his evidence is to be believed, did not undertake to put title to the property in McCallon Auto Company when he delivered possession of it. His intention was precisely the opposite. He claims that his purpose in retaining the tax receipt and withholding a bill of sale was to reserve the title till he received payment in full. Such purpose placed him in a position of full accord with the law's terms. His testimony made his transaction with McCallon Auto Company merely a conditional sale by the terms of which he held the title to be passed upon full payment of the purchase price. On the other hand, Langston's purchase admittedly was thoroughly contrary to the law. Accordingly, appellant was not a party to an unlawful transaction, while Langston was. Appellant is therefore untrammeled in his efforts to recover the automobile by the rule that the courts leave the parties to an unlawful transaction where they find them,

and can rely upon the invalidity of Langston's contract to defeat his claim of title to the car and also that of the bank.

The bank was confronted with notice in the face of the mortgage itself of facts from which, by reference to the tax records, it would have been informed that the car had not been lawfully transferred from appellant, but still stood in his name. Of these records it was bound to take notice.

[5] We do not think the line of decisions from this state and from other jurisdictions holding that a note in the hands of a bona fide purchaser is enforceable, even though it originally issued from a transaction in violation of law or even criminal, is available to the bank in this case to support its contention that, since it was not a party to the unlawful acts involved in the trade between Langston and McCallon Auto Company, it acquired the mortgage in due course and is therefore free to enforce it against the infirmities of the transaction out of which it came. Those cases announce and apply the rule that a negotiable instrument in the hands of a bona fida holder is enforceable even though it was executed as a part of a transaction expressly prohibited by law, or even denounced as criminal, and can be void in the hands of such bona fide holder only in the event that either the Constitution or a statute expressly, or by necessary implication, declares it, or the transaction of which it is a part, to be absolutely void.

The transaction from which the mortgage under consideration in this case issued, according to the construction given the statute in the three cases by our appellate courts above cited, was altogether invalid for any purpose. Under that construction the acts essential to the passage of title were not performed either when McCallon Auto Company acquired the automobile nor when Langston undertook to purchase it. The law mandatorily required the performance of them. Furthermore, as above stated, the mortgage by its own terms contained a description of the car number, the motor number, and of the state highway license number. This descriptive matter was on record at the time in connection with the name of appellant and identified him as the owner of the property. These facts under the provisions and requirements of the statute prescribing the method to be followed in transferring motor vehicles as construed in the above-cited cases, clearly differentiate the position of the bank in this case from that of a bona fide holder of a negotiable instrument executed in the course of an ordinary transaction prohibited by law but not expressly declared by law to be void.

Since appellee Langston acquiesced in the judgment rendered against him in behalf of appellee bank and does not complain of the judgment against him on this appeal, it is unnecessary to express any view with reference to the validity of the obligation expressed by the promise contained in the note itself.

Holding the views above expressed, we are of the opinion that the judgment of the trial court should be reversed, and judgment rendered for appellant. It is accordingly so ordered.

## On Motion for Rehearing.

[6] For the first time, complaint is made in appellees' motion for a rehearing that it is unjust and inequitable to award appellant possession of the automobile and at the same time allow him to retain the $400 paid him by McCallon.

No pleading was interposed below questioning appellant's retention of the money if he were awarded the automobile. There was no prayer that, in the event appellant recovered the car, he should be required to pay Langston the $400. Since no such issue was made by appellees so as to afford appellant an opportunity to meet it and show, if he could, that the payment ought to be offset by the use and deterioration of the car, as well as decline in its market value, we do not think appellees now are in a position to make this contention for the first time on motion for a rehearing.

The motion is overruled.