HENNESSY v. AUTOMOBILE OWNERS' INS. ASS'N. (No. 789–4449.)

(Commission of Appeals of Texas, Section A. April 28, 1926.)

1. Contracts ☞ 136.·

Courts will not recognize rights as springing from illegal contracts, which are void.

2. Contracts ☞ 105.

Contracts prohibited by statute either expressly or impliedly are void without regard to question of moral turpitude.

3. Insurance ☞ 115(6)—One, who bought automobile without demanding and receiving license fee, receipt, or bill of sale, as required by statute, and later sold it to another without compliance, held to have insurable interest therein (Acts 36th Leg. [1919] c. 138, §§ 3a, 3b, 3c, 4, 9 [Vernon's Ann. Pen. Code Supp. 1922, arts. 1617¾c–1617¾f, 1617¾k]).

One, who bought automobile without demanding and receiving license fee, receipt, or bill of sale, as required by Acts 36th Leg. (1919) c. 138, §§ 3a, 3b, 3c, 4, 9 (Vernon's Ann. Pen. Code Supp. 1922, arts. 1617¾c–1617¾f, 1617¾k), and also sold it to another without compliance, held to have insurable interest therein to extent of amount due on buyer's notes, since act does not provide that such sales are void, and that no title shall pass, but was enacted to prevent theft of motor vehicles.

4. Statutes ☞ 184.

Effect to be given language of legislative act is controlled in large measure by purpose in view when law was enacted.

5. Statutes ☞ 212.

Courts may not presume that purpose of legislative act is other than that clearly expressed in caption.

Error to Court of Civil Appeals, Ninth Supreme Judicial District.

Action by W. F. Hennessy against the Automobile Owners' Insurance Association. Judgment for defendant was affirmed by the Court of Civil Appeals (273 S. W. 1024), and plaintiff brings error. Reversed and remanded.

Charles Murphy, of Houston, for plaintiff in error.

Fouts & Patterson, of Houston, for defendant in error.

BISHOP, J. Plaintiff in error, W. F. Hennessy, purchased a secondhand automobile without demanding and receiving the license fee receipt or bill of sale, and thereafter sold the car to one Chisholm, retaining a mortgage on it to secure the payment of the notes executed to him by Chisholm in payment for same. He did not transfer and deliver to Chisholm the license fee, receipt, nor a bill of sale at the time he sold. After the sale to Chisholm the defendant in error, Automobile Owners' Insurance Association, issued its insurance policy against fire and theft upon the car in the sum of $625, payable to plaintiff in error as mortgagee, as his interest might appear. After the issuance of the policy, and while same was in full force and effect, the car was stolen and destroyed by fire. Defendant in error refused to make payment under the policy, and this suit was instituted by plaintiff in error seeking judgment for the amount due on his notes, together with 12 per cent. penalties and attorney's fees.

At the conclusion of the evidence, the district court instructed a verdict for defendant in error, and on this verdict rendered and entered judgment denying plaintiff in error recovery. The Court of Civil Appeals affirmed this judgment, holding that, as plaintiff in error violated the provisions of the act passed by the 36th Legislature at its regular session, 1919, being chapter 138, p. 253 (Vernon's Ann. Pen. Code Supp. 1922 arts. 1617¾–1617¾k), at the time he purchased the automobile, and also violated the provisions of this act at the time he sold the car to Chisholm, neither he nor Chisholm had any title to or insurable interest in the car. 273 S. W. 1024. This holding is sustained by the Courts of Civil Appeals in the cases of Overland Sales Co. v. Pierce (Tex. Civ. App.) 225 S. W. 284; Goode v. Martinez (Tex. Civ. App.) 237 S. W. 576; Foster v. Beall (Tex. Civ. App.) 242 S. W. 1117; Chaddick v. Sanders, 250 S. W. 722; Mullin v. Nash El Paso Motor Co. (Tex. Civ. App.) 250 S. W. 472; Ferris v. Langston (Tex. Civ. App.) 253 S. W. 309; Fulwiler Motor Co. v. Walker (Tex. Civ. App.) 261 S. W. 147; Cullum v. Lub-Tex. Motor Co. (Tex. Civ. App.) 267 S. W. 322; Grapeland Motor Co. v. Lively (Tex. Civ. App.) 274 S. W. 168, and Tri-State Motor Co. v. King (Tex. Civ. App.) 277 S. W. 433.

Sections 3a, 3b, 3c, 4, and 9, of this act are as follows:

"Sec. 3a. It shall be unlawful for any person acting for himself or any one else, to offer for

sale or trade any secondhand motor vehicle in this state, without then and there, having in his actual physical possession the tax collector's receipt for the license fee issued for the year that said motor vehicle is offered for sale or trade.

"Sec. 3b. It shall be unlawful to sell or trade any secondhand motor vehicle in this state without transferring by indorsement of the name of the person to whom said license fee receipt was issued by the tax collector and by physical delivery of the tax collector's receipt for license fee for the year that the said sale or trade is made.

"Sec. 3c. It shall be unlawful for any person acting for himself or another to buy or trade for, any secondhanded motor vehicle in this state without demanding and receiving the tax collector's receipt for the license fee issued for said motor vehicle for the year that said motor vehicle is bought or traded for.

"Any person violating the provisions of sections 3a, 3b, or 3c shall be guilty of a misdemeanor and upon conviction shall be ,fined in any sum, not less than ten dollars ($10) or more than two thousand dollars ($2,000.00), or by confinement in the county jail for any term less than one year, or both such fine and imprisonment, and all moneys collected for such fines shall be placed in the road and bridge fund of the county in which the violation occurs and the penalty is recovered.

"Sec. 4. It shall be unlawful for any person, whether acting for himself or as an employé or agent to sell, trade, or otherwise transfer any secondhand motor vehicle without delivering to the purchaser a bill of sale in duplicate, the form of which is prescribed in this act, one copy of which shall be retained by the transferee as evidence of title to ownership, and the other copy of which shall be filed by the transferee with the county tax collector as an application for transfer of license together with the lawful transfer fee of $1.00.  *  *  *

"Sec. 9. Any one who shall fail to comply with any of the requirements of this act as prescribed in sections 1, 2, 3, 4, 7, and 8, shall be deemed guilty of a misdemeanor, and upon conviction shall be fined in any sum not less than ten ($10.00) dollars, nor more than one hundred ($100.00) dollars, and all such fines when recovered, shall be placed in the road and bridge fund of the county in which the, violation occurs and the penalty is recovered."

[1-3] We agree with the defendant in error that illegal contracts are void, and the courts will not recognize rights as springing therefrom. We are also in accord with its contention that contracts prohibited by statute, either expressly or impliedly, are void without regard to the question of moral turpitude, and that contracts directly and expressly prohibited by a constitutional statute in unmistakable language are absolutely void. This statute, however, does not in unmistakable language prohibit contracts of sale of secondhand motor vehicles. It permits such contracts when made in the manner required by its terms.

Section 9 of the above-quoted act clearly states that it is the failure to comply with the requirements of section 4, which is de-nounced as a crime. The requirements of section 4 are that the seller of a secondhand motor vehicle deliver to the purchaser a bill of sale. in duplicate and that the purchaser shall retain one copy as evidence of title, and file the other with the county tax collector. It is not then 'the sale of secondhand motor vehicles which is penalized, but the failure to comply with the requirements when such sales are made. The sale is regulated, but not otherwise prohibited. The right to sell is not interfered with. The language used in sections 3b and 3c is identical with that used in section 4 in stating that "it shall be unlawful" to sell or buy without transferring and delivering or demanding and receiving the receipt, and the language of section 3c penalizing a person for the offense, while not identical with that used in section 9, is not materially different therefrom. We, for this reason, conclude that the gist of the offense denounced is not the contract of sale, but the failure to comply with the regulatory requirements prescribed.

[4] The act does not expressly provide that sales made without complying with the requirements shall be void. A sale, however, is a necessary incident to a failure to comply with the regulatory requirements; and, if the contract of sale is to be held void, it must be because it will be implied that it was the intention of the Legislature that this should result from the failure to do that which the statute requires. Whether it should be implied that it was the intention of the Legislature that such sales should be void depends upon the effect which should be given the language used in the act, and the effect to be given is controlled in a large measure by the purpose in view when the law was enacted. If the evil for which a remedy was sought was inherent in the sale itself, and the purpose was to correct this evil, it. should be implied that the intention was to prohibit the sale and thereby render it void. If, on the other hand, the purpose was to correct an evil which bore no direct relation to the contract of sale, the courts would not be warranted in holding that it was the intention to declare such a sale void; for, in the latter case, the sale would be a mere incident without any direct relation to the crime committed.

If the evil was the fraudulent sale and transfer of secondhand motor vehicles, and the purpose of this act was to correct this evil, and thereby protect the public from fraud and imposition, a sale without the transfer and delivery of the receipt and execution and delivery of bill of sale would be evidence of a fraudulent transaction and result in a legal presumption of fraud, which would render the contract void. The vice or wrong denounced by the act would inhere in the sale itself. The failure to comply with the requirement would brand the sale as a fraudulent one. In such case it should be

inferred that it was the intention of the Legislature that the contract of sale should not have the effect to transfer title.

[5] The purpose for which this act was passed is clearly expressed in the caption of the bill. It is to prevent the theft of motor vehicles. We may not presume that the purpose was other than that expressed. Its purpose was not to prevent fraudulent sales and transfers. The theft of motor vehicles has no relation to sales and transfers, and can therefore furnish no ground for a legal inference that it was the intention of the Legislature to prevent such sales and thereby render unenforceable contracts in regard to property. This it seems to us is clear. To ascribe to the Legislature the intention to do a thing which is wholly irrelevant to the purpose plainly expressed in the enactment itself would be doing violence to all rules of legal construction. When the language used in this statute, the evil for which remedy was sought, and the effect of holding contracts void when entered into without complying with the requirements made, are all taken into consideration, we think it is manifest that the Legislature had no intention to declare void sales made where the acts required are not performed. Dunlop v. Mercer, 156 F. 545, 86 C. C. A. 435; Harris v. Runnels, 12 How. 84, 13 L. Ed. 901; Pangborn v. Westlake, 36 Iowa, 546; Littell v. Brayton Motor & Accessory Co., 201 P. 34, 70 Colo. 286; Forney v. Jones, 231 P. 158, 76 Colo. 319; Williams v. Stringfield, 231 P. 658, 76 Colo. 343; Carolina Discount Corporation v. Landis Motor Co. (N. C.) 129 S. E. 414.

We cannot agree with the holding that plaintiff in error, Hennessy, got no title to the automobile when he purchased it in violation of the requirements of the act, and that title did not pass to Chisholm on the sale to him. Hennessy had an insurable interest in the property insured, and we recommend that the judgments of both courts be reversed, and the cause remanded to the district court.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

We approve the holding of the Commission of Appeals on the questions discussed in its opinion.