## McLEAN v. YORK OIL FIELD SUPPLY CO., Inc.
### No. 10456.

Circuit Court of Appeals, Fifth Circuit.
Nov. 29, 1943.

Ike S. Kampmann, of San Antonio, Tex., for appellant.

Herbert Oliver, of San Antonio, Tex., and George H. Cavanagh, of Houston, Tex., for appellee.

Before SIBLEY, HUTCHESON, and McCORD, Circuit Judges.

SIBLEY, Circuit Judge.

York Oil Field Supply Company, a Louisiana Corporation, sued Marrs McLean, a citizen of Texas, in the District Court of the United States for the Western District of Texas upon an account consisting of items arising under a written contract between them for the improvement by the Company with its machinery of an oil well of McLean in Texas, the balance claimed being $3,124.06. McLean denied that $3,000 was really in controversy, denied that he owed anything, and set up a counterclaim of $15,000, and it appearing in the trial that the Company had no permit to do business in Texas, he contended that it had no standing to sue under one Texas statute, and that the written contract to improve the well was illegal and void under that and another statute. The judge upheld the right to sue in the federal court and the legality of the contract and submitted the other issues to a jury which awarded the Company $1,614.06. McLean appeals, not contesting the verdict, but only the rulings of the judge on the indicated law points.

As to the amount in controversy it appeared that the Company rendered bills for work and materials and other things for $2,754.36, which McLean refused to pay, and the matter was placed in an attorney's hands. McLean still refused to pay and said he would counterclaim if sued. The attorney suggested to York that suit should be in the federal court, but that more than $3,000 in controversy was necessary to enter that court, and asked if there were any other items. There was an accidental dropping and breaking of a pumping unit as it was being removed from the job, which cost $369.70 to repair, and it was decided this was owing under the contract, and a bill for it was sent in to McLean and payment refused. Suit was then brought for the aggregate amount of $3,124.06. The contract provides on the point: "You (McLean) agree to reimburse me (the Company) for all expenses that might occur on the job, such as all labor, supplies, repairs and etc. that is bought on the job * * * You agree to pay all hauling * * * from Houston to location and from location back to Houston * * *. We will accept the usual wear and tear at our expense." York, who conducted the business for the Company, testified as to his motive in suing for the pump repairs, that he had not intended to charge for it if McLean had settled pleasantly, but that when he acted so ugly about it "we decided we would go by the contract, so we added this $369.70 which we paid to fix up this pump, and I think I had a right to do it." On cross-examination, on being asked if, after being told he must have more than $3,000 to go into federal court, he had not taken back what he had already given McLean, he said: "No, sir, not for that reason I did not * * * I went ahead and did it because I thought I was entitled to it." Being asked if he thought that was the proper interpretation of the contract he said he did—that if his men dropped something and broke it, McLean was liable for the repairs according to the contract.

■ Where a money judgment is sought, the amount in controversy is the sum claimed in the suit. But if it certainly appears that the amount has been fictitiously increased by items known to be false claims and made to create an appearance of jurisdiction, there is a fraud upon the jurisdiction; and when that becomes evident at any time the case is to be dismissed, or remanded if removed from a State court. 28 U.S.C.A. § 80. The question becomes one of good faith in making the claim. That it proves not well founded on trial is not the test. Nor does the fact that it was added to raise the amount in controversy above $3,000 necessarily condemn it, if it was believed recoverable. St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 288, 58 S.Ct. 586, 82 L. Ed. 845, and cases cited. The judge here was, as trier of the fact, justified in finding that this item was not fictitious and created solely to make jurisdiction, but that it was in good faith asserted as recoverable.

■ The Company was admittedly engaged in intrastate business in Texas, and had not qualified as a foreign corporation by filing its articles of incorporation with the Secretary of State nor obtained a permit, as required by Article 1529, Vernon's Revised Civil Statutes of Texas. Article 1536 denies to such a corporation access to

the courts of the State, and penalizes the doing of intrastate business by a forfeiture to the State of not less than $100 or more than $5,000 for each month such business is done, to be recovered by suit. This statute does not operate to cut off the Company's right to sue in the courts of the United States. The State of Texas has not power and has not attempted to do this. See David Lupton's Sons Co. v. Automobile Club, 225 U.S. 489, 32 S.Ct. 711, 56 L.Ed. 1177, Ann.Cas.1914A, 699; Midland Linseed Products Co. v. Warren Bros. Co., 6 Cir., 46 F.2d 870. But, according to the last-cited authority, if the contract sued on is illegal and void under the law of Texas, it will not be enforced either by a federal court, or a State court. It is well established in Texas, as elsewhere, that a contract to do a thing absolutely prohibited by a valid statute is void. Woolsey v. Panhandle Refining Co., 131 Tex. 449, 116 S. W.2d 675; Kadane v. Clark, 135 Tex. 496, 143 S.W.2d 197. But the statutes cited, while requiring the filing of the articles of incorporation and obtaining a permit, do not expressly forbid or make criminal business contracts made without doing this, or declare them void. The statutes go no further than to say that the State will not assist the delinquent corporation in enforcing its rights, and may demand by a civil suit a penalty. It is not intended to make it and all who transact business with it such lawbreakers as that their contracts are wholly unlawful. The true purpose of the Legislature is to be sought, and the contracts made are not to be held unlawful, if that is not the legislative purpose, the penalty being a matter between the State and the delinquent corporation only. Borger v. Brand, 131 Tex. 614, 118 S.W.2d 303; American Nat. Ins. Co. v. Tabor, 111 Tex. 155, 230 S.W. 397; Hennessy v. Automobile Owners' Ass'n, Tex.Com.App. 282 S.W. 791, 46 A.L.R. 521; and see the Lupton case, supra, and Fritts v. Palmer, 132 U.S. 282, 10 S.Ct. 93, 33 L.Ed. 317. We do not think this contract is illegal.

Another later statute, Article 2031a, Vernon's Revised Civil Statutes, goes further and requires that a foreign corporation seeking a permit or having one, shall designate an agent for service of process, and on failure to do this, each of its acts in the State shall as to it be unlawful and void; and additional penalties are provided. This act drastic and penal, is to be strictly construed. This corporation,

neither seeking a permit nor having one, is not within its terms. We have no occasion to examine its effect.

We find no error in the rulings complained of. The judgment is affirmed.