**REEB v. DANLEY.**

No. 11930.

Court of Civil Appeals of Texas. San Antonio.

April 20, 1949.

Rehearing Denied May 18, 1949.

Joe P. Hatchitt, Corpus Christi, for appellant.

Robert C. Van Ness, Corpus Christi, for appellee.

W. O. MURRAY, Justice.

This suit was instituted by Byron Danley in the District Court of Nueces County, Texas, against Paul Reeb, seeking to have the sale to him of a 1941 Chevrolet pick-up truck declared wholly null and void because of the defendant's failure to furnish a certificate of title, and to recover the purchase price paid after allowing certain equitable adjustments.

The trial was to the court without a jury and resulted in judgment declaring the sale by the defendant to plaintiff of the 1941 Chevrolet automobile, bearing motor number AA 117816, wholly null and void, and further decreeing that plaintiff recover from defendant the sum of $386.78, which was the amount paid on the automobile less certain equitable adjustments. The title and ownership of the 1941 Chevrolet automobile was also decreed to be in defendant. From that judgment defendant, Paul Reeb, has prosecuted this appeal.

Appellant's principal contention here presented is that the sale of the automobile, without a "certificate of title" such as is provided for in Art. 1436—1, Vernon's Ann. Penal Code, was illegal and void, and that the courts should not grant relief to the parties to an illegal contract, but should leave them where they have placed themselves. There is no Q. and A. statement of facts here. The only statement of facts is one containing the documentary evidence. The trial judge filed findings of fact, which we here copy in full, to-wit:

"1. On May 28, 1946, plaintiff purchased from Defendant one 1941 Model Chevrolet pick-up truck, same having been converted from a sedan, motor No. AA 117816, for a total consideration of $600.00, of which sum $300.00 was paid in cash on said date by plaintiff to defendant. The balance of $300.00 was financed through the Shelton Insurance Agency, 417 Nixon Building, Corpus Christi, Texas, which paid defendant such amount and collected the same from plaintiff in monthly installments. This financing of the $300.00 balance through the Shelton Insurance Agency was negotiated by defendant for plaintiff.

"2. Defendant had purchased said automobile from the Baker Brothers Chevrolet Company, Searcy, Arkansas, at some date between October 14, 1940, and February 1, 1941. On February 3, 1941, defendant registered and licensed said automobile in this State, in Cameron County, Texas, receiving the 1941 license number 162786, and paying the fee therefor of $11.52, all of which is reflected by Plaintiff's Exhibit No. 5. Subsequent thereto defendant had difficulty in registering said automobile in Texas, he not having at that time a manufacturer's certificate of title, nor a Texas Certificate of Title. He had previously owned a 1938 Chevrolet which had been demolished in a collision near Searcy, Arkansas, immediately prior to his purchase at such place of the automobile involved in this case; and defendant possessed a Texas Certificate of Title to such demolished car, and on December 6, 1945, defendant registered and obtained Texas license plates for such destroyed automobile, said plates bearing license number MS 9937. He placed these plates for the 1938 automobile on the 1941 model vehicle in question herein. Again on February 14, 1946, he obtained Texas license for the said 1938 model Chevrolet and placed the license plates on the 1941 model automobile in question in this case, said license plates bearing number MT 5651. The 1941 model automobile in question had at this time been converted to a pick-up truck. Defendant had accordingly had changed his Certificate of Title on the 1938 vehicle to that of a pick-up truck, and had used this Certificate of Title to obtain 1946 license plates for the 1941 pick-up truck. Defendant used said 1941 car on public roads during 1945 and 1946. These 1946 license plates, bearing number MT 5651, were the ones used on such vehicle during the period from May 28, 1946,

when the plaintiff purchased it, to April 1, 1947. On some date in 1942, after April 2 of that year, defendant received a manufacturer's certificate of title on the automobile involved. in this case from Baker Brothers Chevrolet Company of Searcy, Arkansas. After receiving this manufacturer's certificate of title, defendant never obtained nor tried to obtain a Texas Certificate of Title to said 1941 vehicle, except as hereinafter set forth.

"3. On said May 28, 1946, for the purpose of completing the sale and financing the $300.00 balance due on the said pickup truck, plaintiff and defendant, at defendant's request, met with W. J. Shelton at the office of the Shelton Insurance Agency. At such time and place the following documents were in the possession of defendant and the said W. J. Shelton:

"a. Manufacturer's Certificate relating to said automobile.

"b. 1941 Texas Registration Receipt on the vehicle being sold.·

"c. Certificate of Title on the demolished 1938 motor vehicle.

"d. 1945 Registration Receipt on the 1938 vehicle.

"e. 1946 Registration Receipt on the 1938 vehicle.

"At such time plaintiff saw that defendant and the said Shelton had in their possession various papers or documents, including what purported to be a Texas Certificate of Title to an automobile, but though able to read and write, plaintiff did not examine nor further note the particular nature of such papers. Plaintiff made no demand then and there of defendant or said W. J. Shelton for the registration receipt and Certificate of Title covering the particular vehicle he was purchasing, nor did he prior to April 1, 1947, make an application for a new Certificate of Title at the Collector's office, but the said W. J. Shelton told plaintiff on such occasion that he would take care of the transfer of title and license, and would hold the same until his loan was paid. Defendant and plaintiff never had a prior conversation with reference to the validity of the title of said automobile, and on this occasion such topic

did not come up for discussion between the plaintiff. and defendant.

"4. Plaintiff made monthly payments on his indebtedness to the said Shelton Insurance Agency until the same was fully paid, such indebtedness including an additional loan, the payments extending until after April 1, 1947, and conversed with the said W. J. Shelton at the time of making such payments, frequently asking for a Certificate of Title in his name to the vehicle in question, but on each of these occasions, Shelton reassured plaintiff that the title would be coming through in just a few more days. During one of these conversations, about October, 1946, Shelton delivered to plaintiff the Certificate of Title on the demolished 1938 car and requested plaintiff to take such Certificate of Title back to defendant, stating that it was of no use to him in getting a Certificate of Title in Plaintiff's name to the 1941 pick-up truck. Shelton never attempted to get Cert. of Title to the 1941 car.

"5. Plaintiff operated the 1941 motor vehicle in question herein upon the public highways of this State during the period from May 28, 1946, to April 1, 1947, inclusive, without having first obtained from the State Highway Department a Certificate of Title therefor, either duplicate or original, and without having signed an application therefor.

"6. Plaintiff did not know until a few days before April 1, 1947, that he would be unable to get 1947 license plates through the usual procedure, and that Shelton had not gotten straightened out Certificate of Title to the pick-up truck which he had purchased from defendant. At about this time or shortly thereafter, plaintiff requested Hon. Witold B. Carter and Hon. Tarlton Stafford, attorneys, to aid him in getting 1947 license plates and Texas Certificate of Title to the pick-up truck. These attorneys wrote several letters to Austin and got defendant to execute and sign various application papers for Texas Certificate of Title, but in the end, after some eight and a half months, they failed to obtain either license plates or Certificate of Title, and the State refused to issue

said Cert. of Title to defendant. However, neither plaintiff, nor his attorneys, nor defendant, in accordance with Section 39, Article 1436 PC, applied to the designated agent of the Court for a hearing for the purpose of getting a Certificate of Title issue to plaintiff, nor did they follow any of the additional procedure outlined in such section of the subsections thereof to grant relief to persons desiring Certificates of Title on motor vehicles. Deft. never had a Texas Certificate of Title to the 1941 car.

"7. Within a few days after April 1, 1947, plaintiff offered to return said automobile to defendant if defendant would return $400.00 of the purchase price.

"8. During the period from May 28, 1946, to April 1, 1947, plaintiff used the pick-up truck, first in his fishing business, and then later in his carpentry work. During this period he expended $226.21 for necessary repairs, including replacing burned out transmission.

"9. Although demands were made upon defendant, defendant never delivered nor offered to deliver to plaintiff a Texas Certificate of Title to said automobile.

"10. The reasonable rental value of said pick-up truck from May 28, 1946, to April 1, 1947, is $300.00.

"11. The unusual depreciation of said automobile while in possession of plaintiff is $100.00.

"12. Said pick-up truck has continued in the possession of plaintiff from May 28, 1946, to the time of trial of this cause, and is at the time of trial of the reasonable market value of $40.00.

"13. Plaintiff owes defendant $39.43 for groceries."

■ From the above findings we may properly conclude that appellant violated Sections 33 and 51 of Art. 1436—1, supra, in not having in his possession at the time of the sale a proper certificate of title covering the 1941 Chevrolet pick-up truck, as provided in Sec. 51, and in not transferring such certificate of title to appellee, together with an affidavit to the effect that he was the owner of the motor vehicle and that there were no liens against such motor vehicle, as provided in Sec. 33.

■ Likewise, we must conclude that appellee violated Sec. 52 in buying the truck without then and there demanding of the seller a certificate of title or receipt of the local designated agent (County Tax Collector) covering this particular motor vehicle and having same transferred to him upon the form provided by the Highway Department of the State of Texas.

Sec. 62 makes such violations misdemeanors punishable by a fine of not less than $1.00 or more than $100.00.

Sec. 53 makes all such sales void.

■ Appellee may have been uninformed as to the above provisions of the law, but he cannot set this up as a defense, he is charged with knowledge of the law.

■ If appellee was of the opinion that the automobile he was buying was one that was not covered by a certificate of title but that its owner was entitled to such a certificate of title, then he should have seen to it that such certificate of title was applied for as is provided for by Sec. 30, and that a receipt from the local designated agent (County Tax Collector) provided for in Sec. 31 was obtained before he purchased the automobile. This receipt would have only authorized him to use the automobile upon the highways of this State for a period of ten days unless renewed.

■ When appellee purchased this automobile and in effect paid $600.00 cash for it without either a certificate of title or a receipt from the local designated agent (County Tax Collector) he entered into not only a void contract but also an illegal contract. If we should here permit him to maintain this suit and set aside this illegal contract, and, after adjusting equities, to recover the purchase price paid by him, we would be giving effect to an illegal contract. This we cannot do, but, on the contrary, this Court will leave the parties in the position in which they have placed themselves.

■ We are well aware of the rule that the courts will in some instances give relief under an illegal contract where it is executory and the parties are not in pari delicto. 10 Tex.Jur. p. 242, § 140. Here

we think the contract is executed and the parties are in pari delicto. Appellee purchased this automobile in May, 1948, he used it upon the streets and highways of this State for some ten months, expending money for the repairs of the automobile and causing great wear and tear of it until its value at the time of the trial was found to be some $40.00. It is quite possible that if the proper procedure as provided for in Sec. 39, was followed a certificate of title might, even at this late date, be obtained upon this automobile. As far as appellant and appellee are concerned, this is an executed contract although illegal and void. 7 Blashfield Automobile Law, Perm.Ed., p. 44, § 4261.

Appellee's claim that he is not in pari delicto with appellant is based upon the fact that appellant knew that he did not have a certificate of title to this automobile, but had fraudulently secured license numbers for the years 1945 and 1946 by using a certificate of title to a demolished automobile owned by him and to which he had a certificate of title. Further, he delivered this certificate of title to one Shelton at the time Shelton loaned appellee $300.00 upon this automobile to enable him to complete his payment to appellant. Appellee merely saw this certificate of title, he did not examine it or make any effort to determine whether it covered the automobile he was buying. Appellant did not orally represent to him at the time or prior thereto that it was a certificate of title to the automobile he was selling. In October, 1946, Shelton gave this certificate of title to appellee and told him to take it back to appellant as it would be of no use to him in securing a certificate of title on the Chevrolet pick-up in question. Even with this information appellee continued to use the pick-up and continued to make payments to Shelton. The payments made after he had this information is in effect a part of the damage he now seeks to recover. It was not until about April 1, 1947, when he was brought face to face with the proposition that he could not get a new license number for the pick-up until he secured a certificate of title, that he decided to repudiate this illegal contract and seek to recover his damages,

which could never have occurred to him if he had done what the law required him to do in purchasing the motor vehicle. Art. 1436—1, § 52, Vernon's Ann.P.C. Furthermore, this damage could not have occurred if he had not committed a misdemeanor punishable by a fine of not less than $1.00 and not more than $100.00.

Appellant violated Section 51 and appellee violated Section 52 of Art. 1436—1, Vernon's Ann. Penal Code. The fact that appellant's violation was with more guilty knowledge than was appellee's does not prevent them from being in pari delicto.

In the case of Foster v. Beall, Tex.Civ. App., 242 S.W. 1117, 1118, in which the purchaser of an automobile by cross-action tendered back the automobile and asked for a recovery of the money paid and for cancellation of a note given for part of the purchase money, the automobile having been sold in violation of the law as it then existed, P.C.1925, Art. 1435, the Court said:

"The courts will not enforce illegal contracts, but will leave the parties just where they have placed themselves."

The Commission of Appeals, in effect, overruled the Foster-Beall case, wherein it was held that the contract of sale was absolutely void, because the statute P.C.1925, Art. 1435, did not expressly declare such contracts to be null and void. Hennessy v. Automobile Owners' Ins. Ass'n, 282 S.W. 791, 46 A.L.R. 521. When our present certificate of title act, Art. 1436—1, supra, was passed in 1939 it did expressly declare such sales to be null and void. Sec. 53. So we see no reason now why Foster v. Beall, supra, should not be followed.

In Blashfield Automobile Law, Vol. 7, Perm.Ed., p. 51, § 4263, we find the following:

"Rescission for violation of Statute.

"Under the rule that the courts will not enforce illegal contracts, but will leave the parties in the position they have placed themselves, a purchaser of a second-hand automobile cannot tender it back and recover the amount paid because of the seller's failure to execute a bill of sale and transfer the license fee receipt, as required by statute."

In passing the Certificate of Title Act the Legislature declared the public policy of this State and how the Act should be construed in the following language:

"Art. 1436—1. Motor vehicles; Certificate of Title Act

"Section 1. This Act shall be referred to, cited and known as the 'Certificate of Title Act,' and in the enactment hereof it is hereby declared to be the legislative intent and public policy of this State to lessen and prevent the theft of motor vehicles and house trailers, and the importation into this State of, and traffic in, stolen motor vehicles and house trailers, and the sale of encumbered motor vehicles and house trailers without the enforced disclosure to the purchaser of any and all liens for which any such motor vehicle or house trailer stands as security, and the provisions hereof, singularly and collectively, are to be liberally construed to that end. The terms hereinafter set out, as herein defined, shall control in the enforcement and construction of this Act, and it is further provided that wherever the term 'Motor Vehicle' appears in this Act, it shall be construed to include 'House Trailer.' As amended Acts 1941, 47th Leg., p. 343, ch. 187, § 1; Acts 1947, 50th Leg., p. 168, ch. 105, § 1."

If traffic in stolen motor vehicles and house trailers is to be discouraged in this State, and if this act is to accomplish anything along that line, then a severe penalty must be placed upon purchasers of motor vehicles and house trailers who do not comply with the provisions of this act, and buy such vehicles without first demanding to see the certificate of title or the receipt issued by the local designated agent (County Tax Collector).

If a person may purchase a used automobile in violation of law, as appellee has here done, and then use that automobile in violation of law for some ten months, and when he can no longer use it, due to his inability to secure new license plates, then repudiate such contract, tender back the automobile and recover what he has paid thereon, the provisions of this act will accomplish little. It seems to us that to give such an interpretation to the act would be to encourage traffic in stolen automobiles rather than to discourage such traffic. It is true that the automobile here involved was not a stolen car but it was a car without a proper certificate of title. If people will buy automobiles without certificates of title and pay out their money for them, then traffic in stolen automobiles is quite possible.

The judgment is reversed and judgment here rendered that appellee take nothing and pay all costs of this and the court below.

Reversed and rendered.

NORVELL, Justice.

I concur in the order of reversal and rendition. Appellee may have had the right to disaffirm the contract and recover the money paid by him, had he acted promptly, Fulcher v. Hall, Tex.Civ.App., 170 S.W.2d 321, but here the period during which the appellee delayed bringing this suit or asserting his rights was unreasonable, as indicated by the facts set forth in the opinion by Mr. Justice Murray. Maverick v. Perez, Tex.Com.App., 228 S.W. 148; 7 Tex.Jur. 949.