## YANISH v. ALLSUP.
### No. 6168.

Court of Civil Appeals of Texas. Amarillo.
Oct. 1, 1951.

Rehearing Denied Nov. 5, 1951.

McWhorter, Howard, Cobb & Gibson, Lubbock, for appellant.

Nelson & McCleskey, Lubbock, for appellee.

PITTS, Chief Justice.

Appellant, Herman Yanish, d/b/a Acme Motor Sales, located in Jefferson County, Colorado, filed suit against appellee, Clyde Allsup, for recovery of title and possession of a 1948 used DeSoto convertible coupe automobile, alleging the same to be in possession of appellee in violation of appellant's right of title. Appellee denies appellant's right of recovery and asserts his claim to title and possession of the automobile as an innocent purchaser for a valuable consideration.

The case was tried to the court without a jury and judgment was rendered denying appellant any recovery from which judgment appellant perfected his appeal. Appellant filed his application and bond for sequestration but appellee retained possession of the automobile under his replevy bond. In his application and affidavit for a writ of sequestration appellant fixed the value of the automobile at $3500.

The evidence reveals that appellant purchased the used automobile in question on August 27, 1948, and thereafter on September 4, 1948, Albert Yanish, manager of Acme Motor Sales and acting for appellant,

his brother, Herman Yanish, sold and delivered the said automobile in question to Jerry Sands in Denver, Colorado. In part payment therefor and on the date of the sale Jerry Sands executed a promissory note for the sum of $2300 payable on September 20, 1948, to Acme Motor Sales and secured the same by the execution of a chattel mortgage of the same date on the automobile and delivered them both to Albert Yanish. The address of Jerry Sands as shown on the face of the chattel mortgage was Lakewood, Jefferson County, Colorado. At the time the sale and delivery of the automobile was made to Jerry Sands by Albert Yanish, appellant did not possess a certificate of title to the automobile in question and therefore did not deliver on that date or at any time a certificate of title to Jerry Sands, although the evidence reveals that the laws of the State of Colorado prohibit the sale and transfer of a motor vehicle in that State until the seller thereof has applied for and been granted a certificate of title to the automobile in accordance with the laws of that state. The laws of the State of Colorado further require the owner and seller of such a motor vehicle and the holder of such a certificate of title to endorse on the back of the certificate of title an assignment thereof together with a warranty of title thereto in a form printed thereon with a statement of all chattel mortgage liens, if any, against the motor vehicle and swear to the same, then deliver it to the purchaser of the motor vehicle at the same time delivery of the sold motor vehicle is made. The laws of the State of Colorado also make it a penal offense for a violation of any of the foregoing laws punishable by a fine of $10 to $100 or imprisonment in jail from ten days to six months or both in case of conviction. It must be presumed that such laws were enacted partly for the protection of lien holders, to prevent sales of motor vehicles to innocent purchasers or to prevent theft of such and for the protection of the general public as is partly the purpose of the Certificate of Title Act passed in Texas in 1939 and subsequently amended several times. Vernon's Ann.P.C. art. 1436-1.

The record in this case further reveals that on September 8, 1948, there was issued in the name of Dr. Jerome A. Lawrence a Georgia certificate of registration on the automobile in question in Merriweather County, Georgia, which State had no certificate of title law. Soon thereafter Dr. Jerome A. Lawrence exhibited to W. R. Sheeley, a new and used automobile dealer in Lubbock, Texas, his Georgia certificate of registration as evidence of title to the automobile in question, which automobile he likewise exhibited with a 1948 Georgia license on it and proposed to sell the same to W. R. Sheeley clear of any indebtedness. After making an investigation that included inquiries concerning the records in Merriweather County, Georgia, W. R. Sheeley purchased the automobile in question from Doctor Lawrence in as much as there appeared to be no liens or indebtedness against it and he thereafter made application for a Texas certificate of title to the same. Thereafter on September 23, 1948, W. R. Sheeley sold and delivered the automobile in question to appellee clear of any lien or indebtedness, except that retained by Sheeley himself, for a consideration of $2800 and appellee thereafter procured a Texas certificate of title on the same. The record further reveals that on September 20, 1948, appellant filed his Colorado chattel mortgage against the automobile in question with the County Clerk and Recorder of Jefferson County, Colorado, but no evidence of such mortgage or lien appeared in any of the instruments constituting the chain of title to the automobile held and exhibited by Doctor Lawrence, W. R. Sheeley or appellee.

Based upon the foregoing facts the trial court concluded as a matter of law that appellant violated the laws of the State of Colorado in selling and delivering the automobile in question to Jerry Sands without also delivering to him a certificate of title showing appellant's mortgage and lien on the back thereof and that appellant's having his chattel mortgage recorded in Jefferson County, Colorado, was not sufficient grounds under the facts and the law governing such to support his claims for recovery.

It is our opinion, after a careful examination of the record, that the facts presented to us support the trial court's conclusions.

Appellant, being the plaintiff in the case, assumed the burden of establishing his right to recover. In an effort to establish his right to recover he must rely primarily upon his own chain of title and not primarily upon any weakness that may have been added to appellee's chain of title, due to the negligence of others, after the automobile had been transferred to the State of Texas through the State of Georgia with only a Georgia license plate thereon.

Appellant did not testify in the case himself. He relied on the testimony of his brother, Albert Yanish, who consummated the sale of the automobile to Jerry Sands. According to the testimony of Albert Yanish the automobile was sold and delivered to Sands in violation of the laws of the State of Colorado governing such a matter. With reference to a matter similar to this the Supreme Court said in the case of Kokernot v. Gilstrap, 143 Tex. 595, 187 S.W.2d 368, 370: "It follows that, in so far as recovery of title or the enforcement of any lien against the property are concerned, the transaction evidenced by the contract and the deed under which respondents claim title falls within that class of contracts which are held to be illegal and void and upon which a plaintiff cannot recover when it is necessary for him to prove his own illegal acts as a part of his cause of action. The law leaves the parties to such contracts where it finds them."

Having violated the laws of the State of Colorado in selling and delivering the automobile in question to Jerry Sands without having delivered also a proper certificate of title as the laws of that state directed, appellant's contract of sale upon which he relies for recovery was illegal and void. Our courts will not enforce an illegal contract or claims arising out of such a contract but will leave the parties thereto just where they have placed themselves. In support of this rule of law, we cite the following additional authorities: Borger v. Hazelwood, Tex.Civ.App., 199 S.W.2d 223; Blaine v. Blaine, Tex.Civ.App., 207

S.W.2d 989; Reeb v. Danley, Tex.Civ.App., 221 S.W.2d 579; McLean v. York Oil Field Supply Co., 5 Cir., 138 F.2d 804; Foster v. Beall, Tex.Civ.App., 242 S.W. 1117, 1118. Some criticism was directed at the court's opinion written in 1922 for holding a similar contract to be void in the Foster-Beall case prior to the passing of the Texas Certificate of Title Act, but the passing of that Act in 1939 making motor vehicle sales void if the provisions therein were not complied with nullified the criticism of the rule announced in the Foster-Beall case and such has since been cited with approval. Reeb v. Danley, supra. The Foster-Beall case involved the selling of a used automobile without complying with the provisions of a Texas Statute. The court there said in part: "The statute quoted above was enacted, not simply for the purpose of regulating the transfer of the title to personal property, but as a method of suppressing automobile thefts. Compliance with that law is not a formality which the parties may waive. The general public has an interest in its observance. When the appellee sold and delivered the car to the appellant without executing and delivering the necessary papers, he committed a penal offense, punishable by a fine. He knowingly did that which the law said said he should not do. His alleged good intentions did not excuse him. He is charged with a knowledge of those legal requirements, and he knew that he had not performed them.

We think the logic there expressed applies as well to the facts in this case. In that case the seller tried later to correct his mistake but the court held it was too late. In the case at bar appellant applied for a Colorado certificate of title to the automobile in question prior to the sale of the same but that alone did not meet the requirements of the Colorado laws, which required him to deliver such certificate showing evidence of his lien along with the delivery of the automobile. He procured such certificate several days after the sale and delivery of the automobile and the acceptance of the mortgage lien thereon but it was too late to comply with the provisions of the Colorado law several days after the

sale of the automobile had been consummated and deliveries of it and the chattel mortgage had been made.

Appellant relies upon the case of Bank of Atlanta v. Fretz, 148 Tex. 551, 226 S.W. 2d 843, 849. In that case an automobile was sold in the State of Georgia, which State had no certificate of title law. The next day a chattel mortgage on the automobile was executed by the owner and the original purchaser thereof in favor of the Bank of Atlanta to secure a debt and the chattel mortgage was recorded in the State of Georgia as the laws in that State required. After the laws of the State of Georgia had been fully complied with the automobile was transported to Texas by the original purchaser thereof who sold the same to a Texas purchaser upon the representation that there were no existing debts or liens against the automobile. It was resold and a suit was finally filed to determine whether the Georgia Bank as a lien holder or an innocent purchaser in Texas was entitled to the title and possession of the automobile. The Supreme Court held that in as much as the State of Georgia had no certificate of title law and that the Bank had fully complied with the provisions of the Georgia law in registering its chattel mortgage lien, it was entitled to foreclose its lien and recover the automobile. The Supreme Court further held, in effect, that the Texas Certificate of Title Law was not enacted to invalidate liens validly acquired in some other State not having a similar law to ours. The Court there set out some of the purposes of our Texas Certificate of Title Law but it nowhere approved of a situation such as appellant here presents in which appellant violated the laws of Colorado, which State has a Certificate of Title Law very similar, in part at least, to the Texas Certificate of Title Law, and then seeks to foreclose his purported lien and re-possess the automobile in question as against an innocent purchaser in Texas. In the Bank of Atlanta-Fretz case, the Supreme Court further said: "If the State of Georgia had had a certificate of title law, it would have been the duty of petitioner to see that its lien was endorsed on the certificate of title issued in that State."

The Supreme Court there further held that the Texas Certificate of Title Act, Article 1436–1 of Texas Penal Code as amended, repealed provisions of chattel mortgage registration statutes of Texas affecting the registration of chattel mortgage liens on automobiles and it cites with approval the case of Commercial Credit Co. v. American Mfg. Co., Tex.Civ.App., 155 S.W.2d 834, writ refused. The latter case construes the Texas certificate of Title Act as does the more recent case of Higgins v. Robertson, Tex.Civ.App., 210 S.W.2d 250, 253, by this court in which we said in part: "A reasonable interpretation of the Act and common prudence make it the duty of a lien holder to see that the mortgagor has complied with the State Certificate of Title law in order to protect his lien as well as to protect innocent purchasers. If the lien holder is derelict in his duty, he suffers the consequences as a result of his own negligence."

■■ It does not appear that all of the Colorado Certificate of Title Act was introduced as evidence in the trial of this case but certain sections of it were introduced and enough of it was introduced to show that the Act requires the delivery of a certificate of title to a motor vehicle by the seller at the same time such motor vehicle is delivered to the purchaser when sold and the certificate of title must show on the reverse side thereof a verified assignment with warranty of title and a listing of all existing chattel mortgage liens, if any, on the sold motor vehicle. A failure to do so is a penal offense punishable by fine or jail sentence or both. It was shown that appellant's chattel mortgage on the automobile in question was filed for record in Jefferson County, Colorado, some two weeks after the sale of the motor vehicle was consummated, after the automobile had been transported through Georgia to Texas and on the very day appellant's note was due to be paid. But no showing was made to the effect that the laws of Colorado with respect to the establishment of a valid lien in such cases are any different in that State from those in Texas. In the absence of such a showing supported by both pleadings and proof it is presumed that the laws in

Colorado concerning such a matter are the same as those in Texas governing such a matter. In that event we must follow Texas line of authorities in disposing of such matters. Ross v. Beall, Tex.Civ.App., 215 S.W.2d 225; John Hancock Mut. Life Ins. Co. v. Stanley, Tex.Civ.App., 215 S.W.2d 416; 17 Tex.Jur. 297, Section 84, and other authorities there cited. Our courts have held that a chattel mortgage lien such as appellant here claims to have cannot be lawfully asserted against an automobile as against an innocent purchaser unless evidence of it is disclosed in a valid certificate of title properly issued, even though an asserted lien has been previously filed in the office of the county clerk as provided by other chattel mortgage registration statutes. Commercial Credit Co. v. American Mfg. Co., supra, and Higgins v. Robertson, supra.

For the reasons stated and under the authorities cited the judgment of the trial court is affirmed.